CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
Email: cchoi@hibklaw.com
Email: aito@hibklaw.com
TOPA FINANCIAL CENTER
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile:  (808) 566-6900

Proposed Attorneys for Debtor and
Debtor-in-Possession Wing Spirit Inc.

K&L Gates LLP

JEFFREY T. KUCERA
Email: jeffrey.kucera@klgates.com
Southeast Financial Center, Suite 3900
200 South Biscayne Boulevard
Miami, Florida 33131-2399

JON N. EDEL
Email: jon.edel@klgates.com
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202

EMILY K. MATHER
Email: emily.mather@klgates.com
4350 Lassiter at North Hills Avenue
Suite 300
Raleigh, North Carolina 27609

Proposed Attorneys for Debtor and
Debtor-in-Possession Wing Spirit Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Case No. 20-01383 |
| WING SPIRIT INC., | Chapter 11 |
| Debtor. | [Related to dkt. ## 5, 17] |

82718

**DEBTOR'S SUBMISSION OF PROPOSED [SECOND] DIP LOAN TERM SHEET, BUDGET, AND PROPOSED [SECOND] INTERIM DIP LOAN ORDER; EXHIBITS "A"-"F"**

82810

WING SPIRIT INC. debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, hereby submits in support of its *Motion Of The Debtor For Entry Of An Interim Order (1) Authorizing The Debtor To Obtain Post-Petition Financing On An Interim Basis, Granting Senior Postpetition Security Interests And According Superpriority Administrative Expense Status Pursuant To Sections 364(C) And 364(D) Of The Bankruptcy Code, (2) Authorizing The Use Of Cash Collateral, (3) Modifying The Automatic Stay , and (4) Granting Related Relief; Exhibit A (the "Motion")* filed herein as dkt. #5, the following:

- **Exhibit A**: [Second] *Terms and Conditions of Proposed Senior Secured Super-Priority Debtor-in-Possession Credit Facility*.

- **Exhibit B**: [Redlined] *Terms and Conditions of Proposed Senior Secured Super-Priority Debtor-in-Possession Credit Facility* (<u>as compared to</u> the term sheet attached as Exhibit B to the Motion).

- **Exhibit C**: Budget for Aviation Concepts Inc. for period December 14, 2020 through January 11, 2021

- **Exhibit D**: Budget for Wing Spirit Inc. for period December 14, 2020 through January 11, 2021

- **Exhibit E**: Proposed Second *Order (1) Authorizing The Debtor To Obtain Post-Petition Financing On An Interim Basis, Granting Senior Postpetition Security Interests And According Superpriority Administrative Expense*

2

*Status Pursuant To Sections 364(C) And 364(D) Of The Bankruptcy Code, (2) Authorizing The Use Of Cash Collateral, (3) Modifying The Automatic Stay, and (4) Granting Related Relief.*

- **Exhibit F**:   [Redlined] Proposed Second *Order (1) Authorizing The Debtor To Obtain Post-Petition Financing On An Interim Basis, Granting Senior Postpetition Security Interests And According Superpriority Administrative Expense Status Pursuant To Sections 364(C) And 364(D) Of The Bankruptcy Code, (2) Authorizing The Use Of Cash Collateral, (3) Modifying The Automatic Stay , and (4) Granting Related Relief* (<u>as compared to</u> the *Order (1) Authorizing The Debtor To Obtain Post-Petition Financing On An Interim Basis, Granting Senior Postpetition Security Interests And According Superpriority Administrative Expense Status Pursuant To Sections 364(C) And 364(D) Of The Bankruptcy Code, (2) Authorizing The Use Of Cash Collateral, (3) Modifying The Automatic Stay , and (4) Granting Related Relief* entered herein as dkt. #17).

DATED:     Honolulu, Hawaii, December 14, 2020

/s/ Allison A. Ito
CHUCK C. CHOI
ALLISON A. ITO
Proposed Attorneys for Debtor and
Debtor-in-Possession

3

# EXHIBIT A

**Wing Spirit, Inc.**
**Terms and Conditions of**
**Proposed Senior Secured, Super-Priority**
**Debtor-in-Possession Credit Facility**

---

*The terms outlined below in these Terms and Conditions (this "**DIP Term Sheet**") are the terms and conditions for an amended and restated senior secured, super-priority debtor-in-possession interim credit facility (hereinafter referred to as the "**DIP Facility**") to be made available to the Debtor. This DIP Term Sheet, each Interim Order and the Final Order shall collectively constitute the exclusive and definitive documentation and agreement among the parties for the DIP Facility (the "**DIP Financing Documents**"). Unless otherwise defined herein, capitalized terms shall have the meaning given to them as set out in the Section titled "Other Definitions" below.*

---

| | |
|---|---|
| **Borrower/Debtor:** | Wing Spirit, Inc. |
| **Amount and Type of Facility:** | The first interim advance under the DIP Facility (the "**First Interim DIP Advance**") consisted of a single term advance in the principal amount of $399,310.13 and was advanced by the DIP Secured Lender on [2] December 2020 pursuant to a debtor-in-possession term sheet dated 2 December 2020 as contemplated by an order in respect of the Chapter 11 Case dated 1 December authorizing, *inter alia*, the Debtor to obtain post-petition financing on an interim basis (the "**First DIP Term Sheet** "). |
| | As contemplated by the First DIP Term Sheet, additional DIP Facility advances may be furnished by the DIP Secured Lender to the Debtor. Accordingly, the Debtor and the DIP Secured Lender have agreed on terms for second interim advances under the DIP Facility (the "**Second Interim DIP Advances**" and together with the First Interim DIP Advance the "**Interim DIP Advances**") which will consist of a one or more additional, term advances in the aggregate principal amount of $[1,754,996.16]. |
| | This DIP Term Sheet amends and restates the First DIP Term Sheet. |
| | As set forth in the "*Fees and Expenses*" section herein, the DIP Secured Lender shall have the right to charge the DIP Facility for any fees and expenses incurred by the DIP Secured Lender and payable to the DIP Secured Lender hereunder, and once charged, such costs shall be added to the total balance of DIP Facility obligations. At the DIP Secured Lender's sole discretion, additional DIP Facility advances, in amounts determined by the DIP Secured Lender in its sole discretion, may be furnished by the DIP Secured Lender to the Debtor after further notice and a Bankruptcy Court hearing approving such subsequent advances. Nothing herein shall obligate the DIP Secured Lender to make any advances, other than the Interim DIP Advances. |
| **DIP Secured Lender:** | HT Holdings Co. Limited. |

| | |
|---|---|
| **Borrowing Availability:** | DIP Facility advances shall be limited by the applicable Budget and the terms of this DIP Term Sheet. |
| **Budget and Variances:** | Subject to the Budget Variances (as defined below), each of the line items within the Budget shall be adhered to, by line item, on a weekly basis and a cumulative basis for the Budget period then ending as described below, ***provided however*** that amounts not disbursed in a line item shall be deemed to roll over to subsequent weeks. The Debtor's disbursements for fees and expenses of third party professionals engaged by or for the benefit of the Debtor or the Statutory Committee (if any), including success or transaction fees (collectively, "**Professional Fees**") shall be reported in a manner so that Professional Fees for each retained professional are reflected on its own line item. Any fees payable to professionals retained by the DIP Secured Lender set forth in the Budget shall not be limited by the amounts set forth in the Budget. |
| | Actual amounts for each Budget line item may not vary unfavorably from the applicable Budget by more than ten percent (10.0%) per line item on a weekly basis (the "**Budget Variances**"). |
| | On or before Wednesday of each week, commencing with the first full week following the Petition Date, the Debtor shall deliver to the DIP Secured Lender an Approved Budget Compliance Report. |
| **Fees:** | The Debtor agrees to pay the costs and expenses of the DIP Secured Lender as set forth in the Section titled "*Fees and Expenses*" below. |
| **Termination Date:** | The earliest to occur of: |
| | (a)    the Maturity Date; |
| | (b)    [January 11] 2020 , if the Final Order has not been entered on or before that date; |
| | (c)    acceleration of the obligations under the DIP Facility as a result of an Event of Default; |
| | (d)    the effective date of a confirmed plan of reorganization or liquidation that provides for indefeasible payment in full, in cash of all obligations owing under the DIP Facility and is otherwise acceptable to the DIP Secured Lender in its sole discretion; |
| | (e)    the date which is the closing date of any sale of all or substantially all of any Debtor's assets; |

(f)     the entry of an order by the Bankruptcy Court:
  (i)   granting relief from the automatic stay permitting foreclosure of any assets of the Debtor with a value in excess of $25,000 in the aggregate;
  (ii)  granting any motion by the DIP Secured Lender to terminate the use of cash collateral or lift the stay or otherwise exercise remedies against any cash collateral;
  (iii) appointing a trustee or an examiner with special powers; or
  (iv)  dismissing or converting the Chapter 11 Case;

(g)     the filing or support by the Debtor of a plan of reorganization that:
  (i)   does not provide for indefeasible payment in full, in cash of all obligations owing under the DIP Facility on the effective date of such plan or
  (ii)  is not otherwise acceptable to the DIP Secured Lender in its sole discretion; and

(h)     entry of a Bankruptcy Court order granting liens or claims that are senior or *pari passu* to the liens securing the DIP Facility.

The date on which the earliest of clauses (a) through (h) above occurs and the DIP Secured Lender provides written notice thereof to the Debtor being referred to hereinafter as the "**Termination Date**". On the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Secured Lender shall have no further obligation to provide financing pursuant to the DIP Facility or DIP Financing Documents.

| | |
|---|---|
| **Non-Default Interest Rate and Payment Terms:** | Interest on all outstanding advances under the DIP Facility shall accrue from and after the Petition Date at a per annum rate equal to three percent (3.0%) per annum (the "**Non-Default Interest Rate**"). |
| **Default Interest Rate:** | Effective immediately upon the occurrence of an Event of Default unless waived in writing by the DIP Secured Lender, interest on the outstanding loans under the DIP Facility shall accrue at a rate that is two percent (2.0%) per annum in excess of the Non-Default Interest Rate. |
| **Loan Payments:** | The Debtor promises and agrees to pay to the DIP Secured Lender all DIP Facility advances, together with interest thereon accruing pursuant to the DIP Financing Documents, in full, in cash, on the Maturity Date. |
| | All unpaid principal, interest, fees, costs and expenses in respect of the DIP Facility shall be due and payable in full by the Debtor |

on the Termination Date, whether at maturity, upon acceleration or otherwise and if such amounts are not paid in full in cash, interest, fees, costs, and expenses in respect of the DIP Facility shall continue to accrue until paid in full.

**Use Of Proceeds:** Proceeds of the DIP Facility shall be used solely for the following purposes and only to fund expenditures set forth in the Budget in the amounts set forth in each Budget line item:

(a) to fund post-petition operating expenses and working capital needs of the Debtor, including, but not limited to, those activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930;

(b) to pay interest, fees and expenses to the DIP Secured Lender in accordance with this DIP Term Sheet (whether or not such amounts are reflected in the Budget); and

(c) to pay certain other costs and expenses of administration of the Chapter 11 Cases.

Proceeds of the DIP Facility or cash collateral shall not be used (a) to permit any Debtor, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine (i) the validity, perfection or priority of security interests in favor of the DIP Secured Lender or (ii) the enforceability of the obligations of any Debtor or any guarantor under the DIP Facility, (b) to investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the DIP Secured Lender or any of its agents, attorneys, advisors, owners, employees, or representatives including, without limitation, any lender liability claims or subordination claims, (c) to investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of any Debtor or any guarantor under the DIP Financing Documents, or (d) to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure other than capital expenditures specifically set forth in the Budget and approved by the DIP Secured Lender.

**Cash Management Collections and Remittances:** The Debtor shall use a cash management system that is the same as or substantially similar to their pre-petition cash management system. Any material changes from such pre-petition cash management system must be acceptable to the DIP Secured Lender in its sole discretion. Each Interim Order and Final Order shall provide the DIP Secured Lender with a valid and enforceable lien and security interest on the cash held in the Debtor's bank accounts.

| | |
|---|---|
| **Super-Priority Administrative Claim:** | Amounts owed by Debtor to the DIP Secured Lender pursuant to the DIP Facility (including all accrued interest, fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, a claim having priority over any or all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, subject to payment of the UST Fees (such claim, the "**DIP Superpriority Claim**"). |

**Collateral Security:**  Subject and subordinate only to:

(a) any valid, properly perfected, enforceable, non-avoidable prior liens and security interests existing as of the Petition Date (the "**Senior Third Party Liens**");

(b) the payment of UST Fees; and

(c) the payment of Chapter 7 Trustee Fees,

the DIP Facility (including accrued interest, fees, costs and expenses) shall be secured by first priority senior and priming liens and security interests (the "**DIP Liens**") in all of the Debtor's property, including, without limitation, all of Debtor's existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, aircraft, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, and tax refunds of the Debtor, excluding only Avoidance Actions, but including, subject to entry of the Final Order, Avoidance Proceeds (collectively, the "**DIP Collateral**").

**Lien Validation and Perfection:**  All liens authorized and granted pursuant to an Interim Order or the Final Order entered by the Bankruptcy Court approving the DIP Facility or with respect to adequate protection shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection.

**506(c) Surcharge/Equities of Case**  Upon entry of the Final Order, the Debtor hereby waives any right to surcharge the DIP Collateral, whether pursuant to Bankruptcy Code sections 506(c) or 105(a) or under any other applicable law.

Upon entry of the Final Order, the DIP Secured Lender shall not be subject to the "*equities-of-the-case*" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "*marshaling*" or any similar claim or doctrine with respect to any DIP Collateral.

| | |
|---|---|
| **Fees and Expenses:** | The Debtor shall promptly pay or reimburse the DIP Secured Lender when requested for all reasonable and documented costs and expenses of counsel (including, without limitation, local counsel) and financial advisors for the DIP Secured Lender relating to the DIP Facility and the administration and interpretation of, and the enforcement of remedies under, the DIP Facility, regardless of whether such amounts were incurred prior to or after the Petition Date, including but not limited to, due-diligence, duplication or printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Facility is consummated. The DIP Secured Lender shall have the right to charge the DIP Facility for any such fees and costs; and once charged, such costs shall be added to the total balance of DIP Facility obligations. Failure to pay such fees and expenses within ten (10) days of delivery of the applicable fee reimbursement request (unless the DIP Secured Lender shall have consented to charging such amounts to the DIP Facility in lieu of cash payment) shall be an Event of Default under the DIP Facility, provided that the DIP Secured Lender shall concurrently provide copies of any fee reimbursement request to the U.S. Trustee and the Debtor and allow such parties ten (10) days to review and object to any fees or expenses requested therein.  If any objection is asserted, the Bankruptcy Court shall decide the issue and the Debtor shall not be required to pay any disputed portion of such fees or expenses until the matter is resolved. |

**Conditions Precedent to DIP Facility Advance:**

The closing of the DIP Facility shall be subject to:

(a) approval of the Budget by the DIP Secured Lender, together with all financial information and projections regarding the Debtor requested by the DIP Secured Lender, all in form and substance satisfactory to the DIP Secured Lender in its sole discretion;

(b) entry of a Bankruptcy Court order approving the DIP Facility, the DIP Liens, and the DIP Superpriority Claim, and containing such other orders and findings as the DIP Secured Lender may require, including modification of the automatic stay after a specified notice period following the occurrence of an Event of Default enabling the DIP Secured Lender to exercise certain rights and remedies against the DIP Collateral, which Bankruptcy Court Order, shall not have been modified or amended without approval of the DIP Secured Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Secured Lender in its sole discretion;

(c) the DIP Secured Lender's approval of all material motions and orders filed in the Chapter 11 Case requiring the

expenditure of cash;

(d)    continuation of Debtor's present cash management system; and

(e)    the form and substance of this DIP Term Sheet shall be satisfactory to the DIP Secured Lender in its sole discretion.

**Additional Conditions to the Borrowing Under the DIP Facility:**

Each funding of a DIP Facility advance shall also be subject to the following conditions precedent:

(a)    there shall exist no Event of Default (or event that would constitute an Event of Default with the giving of notice or lapse of time) under any of the DIP Financing Documents, and the representations and warranties therein shall be true and correct in all material respects;

(b)    there shall have occurred no material adverse change in the Debtor's operations (financial, environmental, or otherwise), performance, or properties, since the filing of the Chapter 11 Case, that has or could be expected to have a material adverse effect on the rights and remedies of the DIP Secured Lender or on the ability of any Debtor to perform its obligations under the DIP Facility;

(c)    compliance with Bankruptcy Rule 4001, the entry of the relevant Interim Order and the Final Order (as applicable), together with any other order requested by the DIP Secured Lender authorizing and approving the DIP Facility in form, substance and amount acceptable to the DIP Secured Lender in its sole discretion;

(d)    payment of all fees and expenses owing to the DIP Secured Lender in connection with the DIP Facility (or the DIP Secured Lender shall be satisfied, acting in its sole discretion, that such fees and expenses shall be paid contemporaneously with the funding of a DIP Facility advance); and

(e)    the DIP Financing Documents and any Interim and Final Orders shall include such waivers, indemnities, and other provisions as are acceptable to the DIP Secured Lender in its sole discretion.

**Affirmative and Negative Covenants:**

The Debtors shall comply with the following affirmative and negative covenants:

(a)    compliance with Budget covenants consistent with the Section titled "*Budget and Variances*"; and

(b)    no Material Adverse Effect shall occur.

**Bankruptcy Court Filings:**     As soon as reasonably practicable in advance of filing with the Bankruptcy Court, the Debtor shall furnish to the DIP Secured Lender the drafts of forms of the following (which shall not have been modified or amended upon filing in any material respect without approval of the DIP Secured Lender):

(a)     the motion seeking approval of the DIP Facility, which motion shall be in form and substance satisfactory to the DIP Secured Lender in its sole discretion;

(b)     all other proposed orders and pleadings related to the DIP Facility (other than the relevant Interim Order or Final Order), which orders and pleadings shall be in form and substance satisfactory to the DIP Secured Lender at its sole discretion;

(c)     any plan of reorganization or liquidation, and/or any disclosure statement related to such plan (which plan or disclosure statement shall comply with the requirements set forth herein), which shall be in form and substance satisfactory to the DIP Secured Lender in its sole discretion,

(iv)     any motion seeking approval of any sale of the Debtor's assets and any proposed form of a related bidding procedures order and sale order; and

(v)     any other motion filed seeking approval of any matter requiring material expenditures of DIP Collateral (each of which must be in form and substance satisfactory to the DIP Secured Lender in its sole discretion).

**Remedies:**

Following the Termination Date or the occurrence of an Event of Default, unless such Event of Default has been waived by the DIP Secured Lender in writing in its sole discretion, the DIP Secured Lender shall be entitled to:

(a) declare all DIP Facility obligations to be immediately due and payable and/or terminate the Debtor's use of cash collateral; and

(b) exercise any remedies available to secured creditors under applicable law, including, without limitation, the right to realize on all DIP Collateral, without the necessity of obtaining any further relief or order from the Bankruptcy Court.

Consistent with the foregoing, section 362 relief from the stay in favor of the DIP Secured Lender, as provided herein, shall be embodied in any order approving the DIP Facility and the use of cash collateral.

**Events of Default:**

Defaults and Events of Default shall mean the occurrence of any of the following:

- The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed.

- Filing or support of a proposed plan of reorganization by any Debtor that does not provide for the indefeasible payment in full and in cash of Debtor's obligations outstanding under the DIP Facility, unless otherwise agreed in writing by the DIP Secured Lender in its sole discretion.

- Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full, in cash of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the DIP Secured Lender in its sole discretion.

- Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the DIP Secured Lender, or the filing of any motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Appointment of an examiner with expanded or enlarged powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code without the prior written consent of the DIP Secured Lender, or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Facility, any Interim Order or Final Order approving the DIP Facility, without the prior written consent of the DIP Secured Lender or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Any attempt by any Debtor to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the claims of the DIP Secured Lender, or to subject any of the collateral of the DIP Secured Lender to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- Any Debtor shall request approval of any post-petition financing, other than the DIP Facility, that would not immediately repay all DIP Facility obligations, in full, in cash, on the date of the closing of such post-petition financing.

- Any Debtor shall apply for an order substituting any assets for all or any portion of the DIP Collateral.

- Entry of an order granting liens or claims that are senior or *pari passu* to the liens granted in favor of the DIP Secured Lender under the DIP Financing Documents.

- Any Debtor shall assert that any of the DIP Liens are invalid, or any DIP Liens granted to the DIP Secured Lender shall be determined to be invalid.

- Any payment on, or application by the Debtor for authority to pay any pre-petition claim owing to terminated employees or lease rejection damages without prior written consent of the DIP Secured Lender or as otherwise set forth in the Budget.

- A final order is entered granting any creditor with a claim in excess of $25,000 relief from the automatic stay.

- Failure to make all payments under the DIP Facility when due.

- Failure to pay any post-petition material indebtedness.

- Breach of any covenant set forth in any DIP Financing Document.

- Any material representation or warranty by any Debtor is incorrect or misleading in any material respect when made.

- Exclusivity shall have been terminated or any Debtor shall have agreed to any such termination.

- Any Debtor shall take (or support any other Person in taking)

any action in order to restrict or prohibit the DIP Secured Lender from submitting a "*credit bid*" for any assets of the Debtor.

The commencement of an action or filing of a motion challenging the rights and remedies of the DIP Secured Lender under the DIP Financing Documents or that is otherwise inconsistent with the DIP Financing Documents.

**Indemnification:**        The Debtor hereby indemnifies and holds the DIP Secured Lender, its officers, directors, employees, attorneys, agents, and other representatives (including all of their attorneys and other professionals) (each an "**Indemnified Party**") harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and expenses or disbursements to attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party arising out of or relating to or in connection with the DIP Facility, the DIP Financing Documents, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility.

**Governing Law:**        All documentation in connection with the DIP Facility shall be governed by the laws of the state of New York, subject to applicable federal bankruptcy laws.

**Other Definitions:**

"**Approved Budget Compliance Report**" means a current report, in form and substance satisfactory to the DIP Secured Lender, that: (i) details the actual amount of cash receipts and disbursements for the prior week for each line item included in the Budget (on a weekly and cumulative basis), (ii) compares such actual cash receipts and disbursements (on a line item by line item basis) with the weekly and cumulative budgeted amounts for each such line item set forth in the Budget for such period, and (iii) provides an explanation for all variances between budgeted and actual amounts. Each Approved Budget Compliance Report will be certified as true and correct by the Debtor's chief financial officer or chief executive officer.

"**Avoidance Actions**" means any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute.

"**Avoidance Proceeds**" means the proceeds received from, or property recovered in respect of, Avoidance Actions.

"**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. § 101 et seq.), as amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Hawaii presiding over the Chapter 11 Case.

"**Budget**" means each budget of the Debtor relative to the operations of the Debtor in the Chapter 11 Case for any fiscal period, as delivered to the DIP Secured Lender in form and substance satisfactory to the DIP Secured Lender in its sole discretion. The Budget may be amended from time to time as may be agreed to by the DIP Secured Lender, in writing, in its sole discretion.

"**Chapter 7 Trustee Fees**" means fees, in an amount not to exceed twenty-five thousand dollars ($25,000), available to compensate a Chapter 7 trustee appointed for the Debtor's estate in the event that the Debtor's bankruptcy case is converted to a Chapter 7 proceeding.

"**Chapter 11 Case**" means the voluntary Chapter 11 cases commenced by the Debtor in the Bankruptcy Court.

"**Final Order**" means a final, non-appealable order of the Bankruptcy Court, that, without limitation, approves the DIP Facility and grants the liens and security interests contained therein, on terms satisfactory to the DIP Secured Lender in its sole discretion.

"**Interim Order**" means each interim order of the Bankruptcy Court authorizing Debtor, among other things, to obtain interim

financing and incur post-petition indebtedness on terms satisfactory to the DIP Secured Lender in its sole discretion.

"**Material Adverse Effect**" means (i) a material adverse change in, or a material adverse effect upon, the operations, business, assets, properties, liabilities (actual or contingent) or condition (financial or otherwise) of the Debtor as determined by the DIP Secured Lender acting in its sole discretion; (ii) a material impairment of the rights and remedies of any of the DIP Secured Lender under any of the DIP Financing Documents; (iii) a material impairment of the Debtor to perform any of its obligations under the DIP Financing Documents; or (iv) a material adverse effect upon the legality, validity, binding effect, or enforceability against any Debtor of any of the DIP Financing Documents.

"**Maturity Date**" means the date that is ninety (90) days after the Petition Date, or such later date to which the DIP Secured Lender consents in writing.

"**Petition Date**" means the date on which the Chapter 11 Case for the Debtor was commenced.

"**Statutory Committee**" means any statutory committee appointed in the Chapter 11 Case.

"**UST Fees**" means, unpaid, post-petition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee, as agreed to by the U.S. Trustee or as determined by the Court; provided, however, that the UST Fees shall first be paid from any unencumbered funds (if any) available to the Debtor.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their duly authorized officers as of [14th] December 2020.

**DEBTOR:**

**WING SPIRIT INC.**

By: _____
Name:
Title:

**DIP SECURED LENDER:**

**HT HOLDINGS CO. LIMITED**

By: _____
Name:
Title:

# EXHIBIT B

**Wing Spirit, Inc.**
**Terms and Conditions of**
**Proposed Senior Secured, Super-Priority**
**Debtor-in-Possession Credit Facility**

---

*The terms outlined below in these Terms and Conditions (this "**DIP Term Sheet**") are the terms and conditions for a~~a~~an amended and restated senior secured, super-priority debtor-in-possession interim credit facility (hereinafter referred to as the "**DIP Facility**") to be made available to the Debtor. This DIP Term Sheet, ~~the~~each Interim Order and the Final Order shall collectively constitute the exclusive and definitive documentation and agreement among the parties for the DIP Facility (the "**DIP Financing Documents**"). Unless otherwise defined herein, capitalized terms shall have the meaning given to them as set out in the Section titled "Other Definitions" below.*

---

| | |
|---|---|
| **Borrower/Debtor:** | Wing Spirit, Inc. |
| **Amount and Type of Facility:** | The first interim advance under the DIP Facility (the "**First Interim DIP Advance**") ~~will consist~~consisted of a single term advance in the principal amount of $399,310.13 and was advanced by the DIP Secured Lender on [2] December 2020 pursuant to a debtor-in-possession term sheet dated 2 December 2020 as contemplated by an order in respect of the Chapter 11 Case dated 1 December authorizing, *inter alia*, the Debtor to obtain post-petition financing on an interim basis (the "**First DIP Term Sheet**"). |

As contemplated by the First DIP Term Sheet, additional DIP Facility advances may be furnished by the DIP Secured Lender to the Debtor. Accordingly, the Debtor and the DIP Secured Lender have agreed on terms for second interim advances under the DIP Facility (the "**Second Interim DIP Advances**" and together with the First Interim DIP Advance the "**Interim DIP Advances**") which will consist of a one or more additional, term advances in the aggregate principal amount of $[1,754,996.16].

This DIP Term Sheet amends and restates the First DIP Term Sheet.

As set forth in the "*Fees and Expenses*" section herein, the DIP Secured Lender shall have the right to charge the DIP Facility for any fees and expenses incurred by the DIP Secured Lender and payable to the DIP Secured Lender hereunder, and once charged, such costs shall be added to the total balance of DIP Facility obligations. At the DIP Secured Lender's sole discretion, additional DIP Facility advances, in amounts determined by the DIP Secured Lender in its sole discretion, may be furnished by the DIP Secured Lender to the Debtor after further notice and a Bankruptcy Court hearing approving such subsequent advances. Nothing herein shall obligate the DIP Secured Lender to make any advances, other than the ~~First~~ Interim DIP ~~Advance~~Advances.

| | |
|---|---|
| **DIP Secured Lender:** | HT Holdings Co. Limited. |
| **Borrowing Availability:** | DIP Facility ~~advance(s)~~advances shall be limited by the applicable Budget and the terms of this DIP Term Sheet. |
| **Budget and Variances:** | Subject to the Budget Variances (as defined below), each of the line items within the Budget shall be adhered to, by line item, on a weekly basis and a cumulative basis for the Budget period then ending as described below, ***provided however*** that amounts not disbursed in a line item shall be deemed to roll over to subsequent weeks. The Debtor's disbursements for fees and expenses of third party professionals engaged by or for the benefit of the Debtor or the Statutory Committee (if any), including success or transaction fees (collectively, "**Professional Fees**") shall be reported in a manner so that Professional Fees for each retained professional are reflected on its own line item. Any fees payable to professionals retained by the DIP Secured Lender set forth in the Budget shall not be limited by the amounts set forth in the Budget. |
| | Actual amounts for each Budget line item may not vary unfavorably from the applicable Budget by more than ten percent (10.0%) per line item on a weekly basis (the "**Budget Variances**"). |
| | On or before Wednesday of each week, commencing with the first full week following the Petition Date, the Debtor shall deliver to the DIP Secured Lender an Approved Budget Compliance Report. |
| **Fees:** | The Debtor agrees to pay the costs and expenses of the DIP Secured Lender as set forth in the Section titled "*Fees and Expenses*" below. |
| **Termination Date:** | The earliest to occur of: |
| | (a)     the Maturity Date; |
| | (b)     ~~December 14th,~~[January 11] 2020 , if the Final Order has not been  entered on or before that date; |
| | (c)     acceleration of the obligations under the DIP Facility as a result of an Event of Default; |
| | (d)     the effective date of a confirmed plan of reorganization or liquidation that provides for indefeasible payment in full, in cash of all obligations owing under the DIP Facility and is otherwise acceptable to the DIP Secured Lender in its sole discretion; |

(e)     the date which is the closing date of any sale of all or substantially all of any Debtor's assets;

(f)     the entry of an order by the Bankruptcy Court:
  (i)   granting relief from the automatic stay permitting foreclosure of any assets of the Debtor with a value in excess of $25,000 in the aggregate;
  (ii)  granting any motion by the DIP Secured Lender to terminate the use of cash collateral or lift the stay or otherwise exercise remedies against any cash collateral;
  (iii) appointing a trustee or an examiner with special powers; or
  (iv)  dismissing or converting the Chapter 11 Case;

(g)     the filing or support by the Debtor of a plan of reorganization that:
  (i)   does not provide for indefeasible payment in full, in cash of all obligations owing under the DIP Facility on the effective date of such plan or
  (ii)  is not otherwise acceptable to the DIP Secured Lender in its sole discretion; and

(h)     entry of a Bankruptcy Court order granting liens or claims that are senior or *pari passu* to the liens securing the DIP Facility.

The date on which the earliest of clauses (a) through (h) above occurs and the DIP Secured Lender provides written notice thereof to the Debtor being referred to hereinafter as the "**Termination Date**". On the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Secured Lender shall have no further obligation to provide financing pursuant to the DIP Facility or DIP Financing Documents.

| | |
|---|---|
| **Non-Default Interest Rate and Payment Terms:** | Interest on all outstanding advances under the DIP Facility shall accrue from and after the Petition Date at a per annum rate equal to three percent (3.0%) per annum (the "**Non-Default Interest Rate**"). |
| **Default Interest Rate:** | Effective immediately upon the occurrence of an Event of Default unless waived in writing by the DIP Secured Lender, interest on the outstanding loans under the DIP Facility shall accrue at a rate that is two percent (2.0%) per annum in excess of the Non-Default Interest Rate. |
| **Loan Payments:** | The Debtor promises and agrees to pay to the DIP Secured Lender all DIP Facility advances, together with interest thereon accruing pursuant to the DIP Financing Documents, in full, in cash, on the Maturity Date. |

All unpaid principal, interest, fees, costs and expenses in respect of the DIP Facility shall be due and payable in full by the Debtor on the Termination Date, whether at maturity, upon acceleration or otherwise and if such amounts are not paid in full in cash, interest, fees, costs, and expenses in respect of the DIP Facility shall continue to accrue until paid in full.

**Use Of Proceeds:**

Proceeds of the DIP Facility shall be used solely for the following purposes and only to fund expenditures set forth in the Budget in the amounts set forth in each Budget line item:

(a)    to fund post-petition operating expenses and working capital needs of the Debtor, including, but not limited to, those activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930;

(b)    to pay interest, fees and expenses to the DIP Secured Lender in accordance with this DIP Term Sheet (whether or not such amounts are reflected in the Budget); and

(c)    to pay certain other costs and expenses of administration of the Chapter 11 Cases.

Proceeds of the DIP Facility or cash collateral shall not be used (a) to permit any Debtor, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine (i) the validity, perfection or priority of security interests in favor of the DIP Secured Lender or (ii) the enforceability of the obligations of any Debtor or any guarantor under the DIP Facility, (b) to investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the DIP Secured Lender or any of its agents, attorneys, advisors, owners, employees, or representatives including, without limitation, any lender liability claims or subordination claims, (c) to investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of any Debtor or any guarantor under the DIP Financing Documents, or (d) to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure other than capital expenditures specifically set forth in the Budget and approved by the DIP Secured Lender.

**Cash Management Collections and Remittances:**

The Debtor shall use a cash management system that is the same as or substantially similar to their pre-petition cash management system. Any material changes from such pre-petition cash management system must be acceptable to the DIP Secured Lender in its sole discretion. ~~The~~Each Interim

|  | Order and Final Order shall provide the DIP Secured Lender with a valid and enforceable lien and security interest on the cash held in the Debtor's bank accounts. |
|---|---|

**Super-Priority Administrative Claim:** Amounts owed by Debtor to the DIP Secured Lender pursuant to the DIP Facility (including all accrued interest, fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code, a claim having priority over any or all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, subject to payment of the UST Fees (such claim, the "**DIP Superpriority Claim**").

**Collateral Security:** Subject and subordinate only to:

(a)     any valid, properly perfected, enforceable, non-avoidable prior liens and security interests existing as of the Petition Date (the "**Senior Third Party Liens**"); ~~and~~

(b)     the payment of UST Fees; and

(c)     the payment of Chapter 7 Trustee Fees,

the DIP Facility (including accrued interest, fees, costs and expenses) shall be secured by first priority senior and priming liens and security interests (the "**DIP Liens**") in all of the Debtor's property, including, without limitation, all of Debtor's existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, aircraft, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, and tax refunds of the Debtor, excluding only Avoidance Actions, but including, subject to entry of the Final Order, Avoidance Proceeds (collectively, the "**DIP Collateral**").

**Lien Validation and Perfection:** All liens authorized and granted pursuant to ~~the~~an Interim Order or the Final Order entered by the Bankruptcy Court approving the DIP Facility or with respect to adequate protection shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection.

**506(c) Surcharge/Equities of Case** Upon entry of the Final Order, the Debtor hereby waives any right to surcharge the DIP Collateral, whether pursuant to Bankruptcy Code sections 506(c) or 105(a) or under any other applicable law.

Upon entry of the Final Order, the DIP Secured Lender shall not be subject to the "*equities-of-the case*" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "*marshaling*" or any similar claim or doctrine with respect to any DIP Collateral.

**Fees and Expenses:**

The Debtor shall promptly pay or reimburse the DIP Secured Lender when requested for all reasonable and documented costs and expenses of counsel (including, without limitation, local counsel) and financial advisors for the DIP Secured Lender relating to the DIP Facility and the administration and interpretation of, and the enforcement of remedies under, the DIP Facility, regardless of whether such amounts were incurred prior to or after the Petition Date, including but not limited to, due-diligence, duplication or printing costs, consultation, travel, and attendance at court hearings, regardless of whether the DIP Facility is consummated. The DIP Secured Lender shall have the right to charge the DIP Facility for any such fees and costs; and once charged, such costs shall be added to the total balance of DIP Facility obligations. Failure to pay such fees and expenses within ten (10) days of delivery of the applicable fee reimbursement request (unless the DIP Secured Lender shall have consented to charging such amounts to the DIP Facility in lieu of cash payment) shall be an Event of Default under the DIP Facility, provided that the DIP Secured Lender shall concurrently provide copies of any fee reimbursement request to the U.S. Trustee and the Debtor and allow such parties ten (10) days to review and object to any fees or expenses requested therein.  If any objection is asserted, the Bankruptcy Court shall decide the issue and the Debtor shall not be required to pay any disputed portion of such fees or expenses until the matter is resolved.

**Conditions Precedent to DIP Facility Advance:**

The closing of the DIP Facility shall be subject to:

(a)     approval of the Budget by the DIP Secured Lender, together with all financial information and projections regarding the Debtor requested by the DIP Secured Lender, all in form and substance satisfactory to the DIP Secured Lender in its sole discretion;

(b)     entry of a Bankruptcy Court order approving the DIP Facility, the DIP Liens, and the DIP Superpriority Claim, and containing such other orders and findings as the DIP Secured Lender may require, including modification of the automatic stay after a specified notice period following the occurrence of an Event of Default enabling the DIP Secured Lender to exercise certain rights and remedies against the DIP Collateral, which Bankruptcy Court Order, shall not have been modified or amended without approval

of the DIP Secured Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Secured Lender in its sole discretion;

(c)    the DIP Secured Lender's approval of all material motions and orders filed in the Chapter 11 Case requiring the expenditure of cash;

(d)    continuation of Debtor's present cash management system; and

(e)    the form and substance of this DIP Term Sheet shall be satisfactory to the DIP Secured Lender in its sole discretion.

**Additional Conditions to the Borrowing Under the DIP Facility:**

Each funding of a DIP Facility advance shall also be subject to the following conditions precedent:

(a)    there shall exist no Event of Default (or event that would constitute an Event of Default with the giving of notice or lapse of time) under any of the DIP Financing Documents, and the representations and warranties therein shall be true and correct in all material respects;

(b)    there shall have occurred no material adverse change in the Debtor's operations (financial, environmental, or otherwise), performance, or properties, since the filing of the Chapter 11 Case, that has or could be expected to have a material adverse effect on the rights and remedies of the DIP Secured Lender or on the ability of any Debtor to perform its obligations under the DIP Facility;

(c)    compliance with Bankruptcy Rule 4001, the entry of the <u>relevant</u> Interim Order and the Final Order (as applicable), together with any other order requested by the DIP Secured Lender authorizing and approving the DIP Facility in form, substance and amount acceptable to the DIP Secured Lender in its sole discretion;

(d)    payment of all fees and expenses owing to the DIP Secured Lender in connection with the DIP Facility (or the DIP Secured Lender shall be satisfied, acting in its sole discretion, that such fees and expenses shall be paid contemporaneously with the funding of a DIP Facility advance); and

(e)    the DIP Financing Documents and the~~the~~<u>any</u> Interim and Final Orders shall include such waivers, indemnities, and other provisions as are acceptable to the DIP Secured Lender in its sole discretion.

| | |
|---|---|
| **Affirmative and Negative Covenants:** | The Debtors shall comply with the following affirmative and negative covenants: |

(a)      compliance with Budget covenants consistent with the Section titled "*Budget and Variances*"; and

(b)      no Material Adverse Effect shall occur.

| | |
|---|---|
| **Bankruptcy Court Filings:** | As soon as reasonably practicable in advance of filing with the Bankruptcy Court, the Debtor shall furnish to the DIP Secured Lender the drafts of forms of the following (which shall not have been modified or amended upon filing in any material respect without approval of the DIP Secured Lender): |

(a)      the motion seeking approval of the DIP Facility, which motion shall be in form and substance satisfactory to the DIP Secured Lender in its sole discretion;

(b)      all other proposed orders and pleadings related to the DIP Facility (other than the relevant Interim Order or Final Order), which orders and pleadings shall be in form and substance satisfactory to the DIP Secured Lender at its sole discretion;

(c)      any plan of reorganization or liquidation, and/or any disclosure statement related to such plan (which plan or disclosure statement shall comply with the requirements set forth herein), which shall be in form and substance satisfactory to the DIP Secured Lender in its sole discretion,

(iv)      any motion seeking approval of any sale of the Debtor's assets and any proposed form of a related bidding procedures order and sale order; and

(v)      any other motion filed seeking approval of any matter requiring material expenditures of DIP Collateral (each of which must be in form and substance satisfactory to the DIP Secured Lender in its sole discretion).

| | |
|---|---|
| **Remedies:** | Following the Termination Date or the occurrence of an Event of Default, unless such Event of Default has been waived by the DIP Secured Lender in writing in its sole discretion, the DIP Secured Lender shall be entitled to: |

(a)      declare all DIP Facility obligations to be immediately due and payable and/or terminate the Debtor's use of cash collateral; and

> (b) exercise any remedies available to secured creditors under applicable law, including, without limitation, the right to realize on all DIP Collateral, without the necessity of obtaining any further relief or order from the Bankruptcy Court.

Consistent with the foregoing, section 362 relief from the stay in favor of the DIP Secured Lender, as provided herein, shall be embodied in any order approving the DIP Facility and the use of cash collateral.

**Events of Default:** Defaults and Events of Default shall mean the occurrence of any of the following:

- The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed.

- Filing or support of a proposed plan of reorganization by any Debtor that does not provide for the indefeasible payment in full and in cash of Debtor's obligations outstanding under the DIP Facility, unless otherwise agreed in writing by the DIP Secured Lender in its sole discretion.

- Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full, in cash of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the DIP Secured Lender in its sole discretion.

- Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the DIP Secured Lender, or the filing of any motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Appointment of an examiner with expanded or enlarged powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code without the prior written consent of the DIP Secured Lender, or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Entry of an order by the Bankruptcy Court amending, supplementing, staying, vacating or otherwise modifying the DIP Facility, the ~~the~~any Interim Order or Final Order approving the DIP Facility, without the prior written consent of the DIP Secured Lender or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Any attempt by any Debtor to obtain, or if any other party

in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the claims of the DIP Secured Lender, or to subject any of the collateral of the DIP Secured Lender to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- Any Debtor shall request approval of any post-petition financing, other than the DIP Facility, that would not immediately repay all DIP Facility obligations, in full, in cash, on the date of the closing of such post-petition financing.

- Any Debtor shall apply for an order substituting any assets for all or any portion of the DIP Collateral.

- Entry of an order granting liens or claims that are senior or *pari passu* to the liens granted in favor of the DIP Secured Lender under the DIP Financing Documents.

- Any Debtor shall assert that any of the DIP Liens are invalid, or any DIP Liens granted to the DIP Secured Lender shall be determined to be invalid.

- Any payment on, or application by the Debtor for authority to pay any pre-petition claim owing to terminated employees or lease rejection damages without prior written consent of the DIP Secured Lender or as otherwise set forth in the Budget.

- A final order is entered granting any creditor with a claim in excess of $25,000 relief from the automatic stay.

- Failure to make all payments under the DIP Facility when due.

- Failure to pay any post-petition material indebtedness.

- Breach of any covenant set forth in any DIP Financing Document.

- Any material representation or warranty by any Debtor is incorrect or misleading in any material respect when made.

- Exclusivity shall have been terminated or any Debtor shall have agreed to any such termination.

- Any Debtor shall take (or support any other Person in taking) any action in order to restrict or prohibit the DIP Secured Lender from submitting a "*credit bid*" for any assets of the Debtor.

The commencement of an action or filing of a motion challenging the rights and remedies of the DIP Secured Lender under the DIP Financing Documents or that is otherwise inconsistent with the DIP Financing Documents.

| | |
|---|---|
| **Indemnification:** | The Debtor hereby indemnifies and holds the DIP Secured Lender, its officers, directors, employees, attorneys, agents, and other representatives (including all of their attorneys and other professionals) (each an "**Indemnified Party**") harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and expenses or disbursements to attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party arising out of or relating to or in connection with the DIP Facility, the DIP Financing Documents, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility. |
| **Governing Law:** | All documentation in connection with the DIP Facility shall be governed by the laws of the state of New York, subject to applicable federal bankruptcy laws. |
| **Other Definitions:** | "**Approved Budget Compliance Report**" means a current report, in form and substance satisfactory to the DIP Secured Lender, that: (i) details the actual amount of cash receipts and disbursements for the prior week for each line item included in the Budget (on a weekly and cumulative basis), (ii) compares such actual cash receipts and disbursements (on a line item by line item basis) with the weekly and cumulative budgeted amounts for each such line item set forth in the Budget for such period, and (iii) provides an explanation for all variances between budgeted and actual amounts. Each Approved Budget Compliance Report will be certified as true and correct by the Debtor's chief financial officer or chief executive officer. |
| | "**Avoidance Actions**" means any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute. |
| | "**Avoidance Proceeds**" means the proceeds received from, or property recovered in respect of, Avoidance Actions. |
| | "**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. § 101 et seq.), as amended. |
| | "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Hawaii presiding over the Chapter 11 Case. |
| | "**Budget**" means the~~the~~each budget of the Debtor relative to the operations of the Debtor in the Chapter 11 Case for any fiscal period, as delivered to the DIP Secured Lender in form and substance satisfactory to the DIP Secured Lender in its sole discretion. The Budget may be amended from time to time as may be agreed to by the DIP Secured Lender, in writing, in its sole discretion. |

"**Chapter 7 Trustee Fees**" means fees, in an amount not to exceed twenty-five thousand dollars ($25,000), available to compensate a Chapter 7 trustee appointed for the Debtor's estate in the event that the Debtor's bankruptcy case is converted to a Chapter 7 proceeding.

"**Chapter 11 Case**" means the voluntary Chapter 11 cases commenced by the Debtor in the Bankruptcy Court.

"**Final Order**" means a final, non-appealable order of the Bankruptcy Court, that, without limitation, approves the DIP Facility and grants the liens and security interests contained therein, on terms satisfactory to the DIP Secured Lender in its sole discretion.

"**Interim Order**" means ~~an~~each interim order of the Bankruptcy Court authorizing Debtor, among other things, to obtain interim financing and incur post-petition indebtedness on terms satisfactory to the DIP Secured Lender in its sole discretion.

"**Material Adverse Effect**" means (i) a material adverse change in, or a material adverse effect upon, the operations, business, assets, properties, liabilities (actual or contingent) or condition (financial or otherwise) of the Debtor as determined by the DIP Secured Lender acting in its sole discretion; (ii) a material impairment of the rights and remedies of any of the DIP Secured Lender under any of the DIP Financing Documents; (iii) a material impairment of the Debtor to perform any of its obligations under the DIP Financing Documents; or (iv) a material adverse effect upon the legality, validity, binding effect, or enforceability against any Debtor of any of the DIP Financing Documents.

"**Maturity Date**" means the date that is ninety (90) days after the Petition Date, or such later date to which the DIP Secured Lender consents in writing.

"**Petition Date**" means the date on which the Chapter 11 Case for the Debtor was commenced.

"**Statutory Committee**" means any statutory committee appointed in the Chapter 11 Case.

"**UST Fees**" means, unpaid, post-petition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee, as agreed to by the U.S. Trustee or as determined by the Court; provided, however, that the UST Fees shall first be paid from any unencumbered funds (if any) available to the

Debtor.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their duly authorized officers as of ~~the date first set forth above~~[14th] December 2020.

**DEBTOR:**

**WING SPIRIT INC.**

By: _____
Name:
Title:

**DIP SECURED LENDER:**

**HT HOLDINGS CO. LIMITED**

By: _____
Name:
Title:

Document comparison by Workshare 10.0 on Saturday, December 12, 2020 10:57:38 PM

| Input: | |
|---|---|
| Document 1 ID | file://M:\Wing Spirit\Wing Spirit - DIP Term Sheet_80625985_4.DOCX |
| Description | Wing Spirit - DIP Term Sheet_80625985_4 |
| Document 2 ID | iManage://HKDMS/Active/80761971/3 |
| Description | #80761971v3<Active> - Wing Spirit - A&R DIP Term Sheet (2nd Advance) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 15 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 38 |

# EXHIBIT C

**AVIATION CONCEPTS INC.**

| Payment ID | Payee | Purpose | Payment Amount | Payment Date | |
|---|---|---|---|---|---|
| E | Altres | Payroll admin - $45/employee | $ 1,500.00 | 12/15/2020 | |
| E | Altres | Payroll 11/25/20~12/08/20 | $ 147,736.21 | 12/15/2020 | |
| E | Amalia P. Sta. Ana | ACI records manager - contractor | $ 2,500.00 | 12/15/2020 | |
| 480 | AT&T | iPad data Service 10/22-11/21 | $ 357.89 | 12/15/2020 | |
| 512 | AT&T | iPad data Service 11/22-12.21 | $ 350.87 | 12/15/2020 | |
| 468 | Cardmember Service | Credit card actvitiy 09/05 - 10/07 (Balance) | $ 6,705.63 | 12/15/2020 | |
| E | Clinical Laboratories of Hawaii | New employees and random | $ 260.67 | 12/15/2020 | |
| E | Flight Safety | Recurrent Training -Justin Harris (Dec 2020 Flight Training) | $ 6,800.00 | 12/15/2020 | |
| E | Flight Safety | Recurrent Training- James Covington (Dec 2020 Flight Training) | $ 6,800.00 | 12/15/2020 | |
| E | Flight Safety | Recurrent Training-Ronald Hoopai (Dec 2020 Flight Training) | $ 6,800.00 | 12/15/2020 | |
| E | Flight Safety | Recurrent Training-Jari Lindbergh (Dec 2020 Flight Training) | $ 18,400.00 | 12/15/2020 | |
| E | Flight Safety | Recurrent Training- Dana Saville (Dec 2020 Flight Training) | $ 18,400.00 | 12/15/2020 | |
| E | Flight Safety | Recurrent Training- Chase Johnson(Dec 2020 Flight Training) only go Once a year | $ 18,400.00 | 12/15/2020 | |
| 442 | Flight Safety | Recurrent Training - Ronald Hoopai - confirmed with Flight Safety about 10/15 pay date | $ 6,800.00 | 12/15/2020 | Past due catch up |
| 443 | Flight Safety | Recurrent Training - John Riddel Jr. - confirmed with Flight Safety about 10/15 pay date | $ 6,800.00 | 12/15/2020 | Past due catch up |
| 444 | Flight Safety | Recurrent Training - Sharp Gary - confirmed with Flight Safety about 10/15 pay date | $ 6,800.00 | 12/15/2020 | Past due catch up |
| 445 | Flight Safety | Recurrent Training - Dowson Gaylord - confirmed with Flight Safety about 10/15 pay date | $ 6,800.00 | 12/15/2020 | Past due catch up |
| 446 | Flight Safety | Suga Garrett: HondaJet 420, Check Ride & Recurrent Pilot | $ 18,400.00 | 12/15/2020 | Past due catch up |
| E | Foreflight | Annual subscription for flight plan software | $ 209.40 | 12/15/2020 | |
| 505 | HMSA | Medical insurance for employees - Nov 20 | $ 24,273.34 | 12/15/2020 | Past due catch up |
| E | HMSA | Medical insurance for employees - Dec 20 | $ 20,958.52 | 12/15/2020 | |
| 476 | Hosoda & Bonner | Legal fees to company's primary legal counsel | $ 5,026.18 | 12/15/2020 | |
| 514-1 | John Riddel | Seperation Settlement 1099 payment | $ 11,530.97 | 12/15/2020 | One time charge |
| 503 | Kaiser Permanente | Medical insurance for employees - Nov 20 | $ 2,717.59 | 12/15/2020 | Past due catch up |
| 504 | Kaiser Permanente | Medical insurance for employees - Dec 20 | $ 515.36 | 12/15/2020 | |
| E | R&D | Annual tool calibration | $ 1,300.00 | 12/15/2020 | |
| 516 | Signature Flight | Fuel for N192 and N193; Hurricane Douglas Preparation | $ 1,100.48 | 12/15/2020 | |
| 484 | Softtech | Flight Duty Tracker Monthly | $ 368.00 | 12/15/2020 | |
| 346 | Spectrum Engineering Hawaii | Rent of 50 Kw generator | $ 479.58 | 12/15/2020 | |
| 426 | The Hartford | Temporary disability insurance premium | $ 9,351.00 | 12/15/2020 | |
| E | Various | Travel Expensse for Flight Safety Training -Justin Harris (Dec 2020 Flight Training) | $ 3,149.00 | 12/15/2020 | |
| E | Various | Travel Expensse for Flight Safety Training -James Covington (Dec 2020 Flight Training) | $ 3,149.00 | 12/15/2020 | |
| E | Various | Travel Expensse for Flight Safety Training -Ronald Hoopai (Dec 2020 Flight Training) | $ 3,149.00 | 12/15/2020 | |
| E | Various | Travel Expensse for Flight Safety Training -Jari Lindbergh (Dec 2020 Flight Training) | $ 3,149.00 | 12/15/2020 | |
| E | Various | Travel Expensse for Flight Safety Training - Dana Saville (Dec 2020 Flight Training) | $ 3,149.00 | 12/15/2020 | |
| E | Various | Travel Expensse for Flight Safety Training - Chase Johnson(Dec 2020 Flight Training) | $ 3,149.00 | 12/15/2020 | |
| 457 | Visual Systems | IT help desk services | $ 1,743.79 | 12/15/2020 | |
| E | Western Aeromed | FAA drug abatement program | $ 1,798.00 | 12/15/2020 | |
| E | EPIC Card Services | Fuel Credit card Transactions 12/2-12/8 | $ 2,500.00 | 12/24/2020 | |
| E | EPIC Card Services | Fuel Credit card Transactions 12/9-12/15 | $ 2,500.00 | 12/24/2020 | |
| | | | **$ 385,877.48** | | |

**AVIATION CONCEPTS INC.**

| Payment ID | Payee | Purpose | Payment Amount | Payment Date |
|---|---|---|---|---|

**AVIATION CONCEPTS INC.**

| Payment ID | Payee | Purpose | Payment Amount | Payment Date |
|---|---|---|---|---|
| E | Altres | Payroll admin - $45/employee | $ 1,500.00 | 12/31/2020 |
| E | Altres | Payroll 12/9/20~12/25/20 | $ 145,244.64 | 12/31/2020 |
| E | Amalia P. Sta. Ana | ACI records manager - contractor (November) | $ 2,500.00 | 12/31/2020 |
| 424-5 | First Insurance Funding | Business insurance policies - Jan 2021 payment | $ 5,547.21 | 12/31/2020 |
| E | Flight Safety | Recurrent Training-Andrew Corrie (Jan 2021 Flight Training) | $ 18,400.00 | 12/31/2020 |
| E | Flight Safety | Recurrent Training-William Seavy ( Jan 2021 Flight Training) | $ 18,400.00 | 12/31/2020 |
| E | HMSA | Medical insurance for employees - Jan 2021 | $ 21,000.00 | 12/31/2020 |
| E | Kaiser Permanente | Medical insurance for employees - Jan 2021 | $ 515.36 | 12/31/2020 |
| 513 | Softtech | Flight Duty Tracker Monthly (15) | $ 345.00 | 12/31/2020 |
| E | TBD | 401k transfer | $ 600.00 | 12/31/2020 |
| E | Various | Travel Expense for Flight Safety Training -Andrew Corrie (Jan 2021 Flight Training) | $ 2,149.00 | 12/31/2020 |
| E | Various | Travel Expense for Flight Safety Training -William Seavy ( Jan 2021 Flight Training) | $ 2,149.00 | 12/31/2020 |
| E | Visual Systems | Nov. IT Services | $ 600.00 | 12/31/2020 |
| E | Western Aeromed | Annual subscription for drug abatement program | $ 540.00 | 12/31/2020 |
| E | Cardmember Service | Credit card activity - 11/6-12-7 | $ 19,931.08 | 1/3/2021 |
| E | EPIC Card Services | Fuel Credit card Transactions 12/16-12/22 | $ 4,000.00 | 1/7/2021 |
| E | EPIC Card Services | Fuel Credit card Transactions 12/23-12/29 | $ 4,000.00 | 1/7/2021 |
| | | | $ 247,421.29 | |

# EXHIBIT D

| Payee | 目的/Purpose | Payment request | Previously received | Payment Date | |
|---|---|---|---|---|---|
| ABM Parking | Parking for corporate offices - Dec 2020 | $ 940.00 | | 12/15/2020 | |
| Airgas USA | Medical oxygen, aviation oxygen, nitrogen for tires | $ 2,350.00 | | 12/15/2020 | |
| Alliant | Insurance（P135）- N192WS Estimate | $ 21,117.20 | | 12/15/2020 | Insurance for 2nd Medivac. Premium through May 2021 |
| Alliant | Insurance（P135）- N193WS Estimate | $ 29,560.80 | | 12/15/2020 | Insurance for VIP. Premium through May 2021 |
| Altres | Monthly payroll process fee payments Estimate | $ 2,500.00 | | 12/15/2020 | |
| Altres | Payroll 11/25/20~12/8/20 Estimate | $ 159,000.00 | | 12/15/2020 | Base payroll |
| Altres | Payroll 12/9 - 12/18 (terminated employees paychecks) | $ 30,000.00 | | 12/15/2020 | One time charge |
| Altres | Payroll - severance for terminated employees | $ 50,000.00 | | 12/15/2020 | One time charge |
| Arieh Levine | Medical director fees 10/16-10/31 | $ 2,500.00 | | 12/15/2020 | Catch up subject to court approval |
| Arieh Levine | Medical director fees 11/1-11/15 | $ 2,500.00 | | 12/15/2020 | Catch up subject to court approval |
| Arieh Levine | Medical director fees 11/16-11/30 | $ 2,500.00 | | 12/15/2020 | Catch up subject to court approval |
| Aviation Concepts Inc | Dec 15 invoice | $ 385,877.48 | | 12/15/2020 | See separate sheet--includes one time charges and catch ups required |
| Aviation Management Services | Financial advisory services - Dec 2020 | $ 40,000.00 | | 12/15/2020 | Subject to court approval |
| CAMP Systems International | CAMP maintenance tracking system - N994WS - payment needs to be sent by 11/30 to avoid service disruption | $ 4,800.00 | | 12/15/2020 | Guam |
| Capitol Consultants of Hawaii | December 2020 services (WS) | $ 13,612.56 | | 12/15/2020 | Creditor--subject to court approval |
| DEG LLC | Suite 1600 / December | $ 24,820.75 | | 12/15/2020 | Office rent for currently used space |
| DEG LLC | Suite 1610 / December | $ 15,958.02 | | 12/15/2020 | Office rent for currently used space |
| Douglas Calvert | Medical director fees 11/16-11/30 | $ 3,750.00 | | 12/15/2020 | Catch up subject to court approval |
| Douglas Calvert | Medical director fees 10/16-10/31 | $ 3,750.00 | | 12/15/2020 | Catch up subject to court approval |
| Douglas Calvert | Medical director fees 11/1-11/15 | $ 3,750.00 | | 12/15/2020 | Catch up subject to court approval |
| Emergency Medical Products | Medical supplies for air ambulance teams Estimate | $ 2,471.77 | | 12/15/2020 | |
| First Insurance Funding | Business insurance premiums - Dec 2020 | $ 8,042.14 | | 12/15/2020 | |
| Hawaiian Telcom | Phone service at hangar - 11/10 - 12/9 | $ 70.00 | | 12/15/2020 | |
| Henry Schein | Medicine - Some items continue to remain on backorder Estimate | $ 795.19 | | 12/15/2020 | |
| HMSA | Health insurance - Dec 2020 | $ 39,424.02 | | 12/15/2020 | |
| HMSA | Health insurance 11/1-11/30 | $ 30,071.34 | | 12/15/2020 | Catch up from last month |
| JP Howard MD Inc | Medical director fees 10/16-10/31 | $ 2,500.00 | | 12/15/2020 | Catch up subject to court approval |
| JP Howard MD Inc | Medical director fees 11/1-11/15 | $ 2,500.00 | | 12/15/2020 | Catch up subject to court approval |
| JP Howard MD Inc | Medical director fees 11/16-11/30 | $ 2,500.00 | | 12/15/2020 | Catch up subject to court approval |
| Ninth Brain Suite | Learning and time management software monthly subscription fee | $ 1,305.00 | | 12/15/2020 | |
| PRC | Dec consulting fee | $ 14,000.00 | $ 12,000.00 | 12/15/2020 | Subject to court approval |
| PRC | Retainer | $ 14,000.00 | | 12/15/2020 | Subject to court approval |
| Sage | Annual software license to sage intacct renewal | $ 16,221.00 | | 12/15/2020 | Past due and covers one year |
| Softtech | Annual maintenance fee of sofware to provide an accurate, real-tim | $ 10,000.00 | | 12/15/2020 | |
| Spectrum Business | Internet and phone services - Hilo base house 11/13-12/12 | $ 221.55 | | 12/15/2020 | |
| State of Hawaii - DOT | Hilo aireport December rent + security deposit | $ 20,270.92 | | 12/15/2020 | New lease subject to court approval |
| State of Hawaii - DOT | Registration of aircraft N191, N192, N193, N992 | $ 40.00 | | 12/15/2020 | |
| Sylvia Moffatt | Dec rent | $ 2,200.00 | | 12/15/2020 | |
| The Hartford | Temporary disability insurance - Quarterly payments Estimate | $ 11,902.00 | | 12/15/2020 | |
| Williams Scotsman | December rent payment | $ 6,481.42 | | 12/15/2020 | |
| Xerox | Photocopier - Dec rent fee | $ 600.00 | | 12/15/2020 | |
| Yonatan Inc | Financial support services | $ 250,000.00 | | 12/15/2020 | See separate sheet |

| | | | | | |
|---|---|---|---|---|---|
| Arieh Levine | Medical director fees 12/1-12/15 | $ 2,500.00 | $ 2,500.00 | 12/21/2020 | Current payment already approved in first request (2,500 of 17,500 for Medical Directors) |
| Douglas Calvert | Medical director fees 12/1-12/15 | $ 3,750.00 | $ 3,750.00 | 12/21/2020 | Current payment already approved in first request (3,750 of 17,500 for Medical Directors) |
| JP Howard MD Inc | Medical director fees 12/1-12/15 | $ 2,500.00 | $ 2,500.00 | 12/21/2020 | Current payment already approved in first request (2,500 of 17,500 for Medical Directors) |
| Bank of Hawaii | Bank fees | $ 300.00 | | 12/24/2020 | |
| Central Pacific Bank | Bank fees | $ 300.00 | | 12/24/2020 | |
| | | | | | |
| | | $ 1,244,253.16 | $ 20,750.00 | $ 1,223,503.16 | |
| | | | | | |
| | | | | | |
| ABM Parking | Parking for corporate offices - Jan 2021 | $ 940.00 | | 12/31/2020 | |
| Altres | Monthly payroll process fee 2 installment payments Estimate | $ 2,500.00 | | 12/31/2020 | |
| Altres | Payroll 12/9/20~12/25/20 Estimate | $ 110,000.00 | | 12/31/2020 | Estimated $50,000 reduction |
| Amex | Credit Card Payment | $ 1,127.03 | | 12/31/2020 | |
| Aviation Concepts Inc | Dec 31 invoice | $ 247,421.29 | | 12/31/2020 | |
| Aviation Concepts LLC (Guam entity, not related to debtor | Hangar parking (N994 & N551) in Guam - Dec | $ 10,000.00 | | 12/31/2020 | Charges to maintain and park the aircraft in Guam. The company name is randomly the same as the WS subsidiary but no connection |
| CAMP Systems International | CAMP maintenance tracking system - N551WS | $ 4,800.00 | | 12/31/2020 | Guam VIP |
| CAMP Systems International | CAMP maintenance tracking system - N193WS | $ 4,800.00 | | 12/31/2020 | HI Parked future conversion |
| CAMP Systems International | CAMP maintenance tracking system - N996WS | $ 4,800.00 | | 12/31/2020 | Nebraska |
| DEG LLC | Suite 1600 / Jan | $ 26,061.79 | | 12/31/2020 | Office rent for currently used space |
| DEG LLC | Suite 1610 / Jan | $ 16,745.15 | | 12/31/2020 | Office rent for currently used space |
| Hawaii Electric Light Company | Hilo electricity charges - Dec 2020 | $ 300.00 | | 12/31/2020 | |
| HMSA | Health insurance - Jan | $ 32,000.00 | | 12/31/2020 | |
| Honolulu Disposal Service | State Hangar refuse services - Jan 2021 | $ 130.00 | | 12/31/2020 | |
| Kaiser | Health insurance - Jan | $ 2,500.00 | | 12/31/2020 | |
| Pacific Wave Telecom | Network services Mokuea 12/1-12/31 | $ 520.95 | | 12/31/2020 | |
| Pacific Wave Telecom | Network services Merchant St 12/1-12/31 | $ 604.18 | | 12/31/2020 | |
| Peters Communications | December 2020 services monthly retainer estimate | $ 4,712.04 | | 12/31/2020 | |
| State of Hawaii - DOT | Hangar rent - Jan | $ 9,996.48 | | 12/31/2020 | |
| Sylvia Moffatt | Jan 2021 rent | $ 2,200.00 | | 12/31/2020 | |
| TBD | 401k transfer | $ 600.00 | | 12/31/2020 | |
| Toshiba America Business Solutions | Office copier and printers 4555CU Suite 2800 - Dec 20 - Feb 21 | $ 386.65 | | 12/31/2020 | |
| Toshiba America Business Solutions | Suite 1600 copiers | $ 500.00 | | 12/31/2020 | |
| Williams Scotsman | January 2021 rent payment | $ 6,481.42 | | 12/31/2020 | |
| First Insurance Funding | Business insurance premiums - Jan 2021 | $ 29,501.42 | | 1/1/2021 | |
| Ninth Brain Suite | Learning and time management software monthly subscription fee | $ 435.00 | | 1/1/2021 | |
| Elavon | Credit card processor | $ 200.00 | | 1/4/2021 | |
| Pacific Wave Telecom | Network services Mokuea - Jan 2021 | $ 530.00 | | 1/4/2021 | |
| Pacific Wave Telecom | Network services Merchant St - Jan 2021 | $ 700.00 | | 1/4/2021 | |
| Arieh Levine | Medical director fees 12/16-12/31 | $ 2,500.00 | $ 2,500.00 | 1/5/2021 | Current payment already approved in first request (2,500 of 17,500 for Medical Directors) |
| Douglas Calvert | Medical director fees 12/16-12/31 | $ 3,750.00 | $ 3,750.00 | 1/5/2021 | Current payment already approved in first request (3,750 of 17,500 for Medical Directors) |
| JP Howard MD Inc | Medical director fees 12/16-12/31 | $ 2,500.00 | $ 2,500.00 | 1/5/2021 | Current payment already approved in first request (2,500 of 17,500 for Medical Directors) |
| AMEX | Credit card payment | $ 10,000.00 | | 1/10/2021 | |
| | | | | | |
| | | $ 540,243.40 | $ 8,750.00 | $ 531,493.40 | |

# EXHIBIT E

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| In re | Chapter 11 |
| WING SPIRIT, INC., | Case No. 20-1383 |
| Debtor | Re: Docket No. |

## SECOND ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING ON AN INTERIM BASIS, GRANTING SENIOR POSTPETITION SECURITY INTERESTS AND ACCORDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE, (2) AUTHORIZING THE USE OF CASH COLLATERAL, (3) MODIFYING THE AUTOMATIC STAY, AND (4) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtor (the "Debtor") seeking, among other things:

(1) authority pursuant to sections 363 and 364(c) and (d) to obtain debtor-in-possession secured financing (the "DIP Facility") pursuant to the following terms and agreements (collectively, the "DIP Financing Documents"): (a) this Order, and any final order entered by the Court with respect to the Motion (the "Final Order"), and (b) the *Wing Spirit, Inc., Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility*, attached hereto as Exhibit B, as amended, modified, and/or supplemented (the "DIP Term Sheet"),[1] by and among the Debtor, as borrower and debtor-in-possession, HT Holdings Co. Limited (the "DIP Secured Lender");

(2) the grant to the DIP Secured Lender of superpriority administrative claim status pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Order;

(3) authorization for the Debtor's use of cash collateral (the "DIP Cash Collateral"), as contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein;

(4) modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h); and

(5) a final hearing setting for the Motion for entry of an order authorizing the DIP Facility and use of DIP Cash Collateral on a final basis.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Term Sheet.

Notice of the Motion, the relief requested therein, and the First Interim Hearing and Second Interim Hearing (as defined below) (the "Notices") having been served by the Debtor in accordance with Bankruptcy Rule 4001(c) on: (i) the DIP Secured Lender; (ii) the United States Trustee for the District of Hawaii (the "U.S. Trustee"); (iii) the holders of the twenty (20) largest unsecured claims against the Debtor's estate; (iv) all parties known to the Debtor who hold any liens or security interest in the Debtor's assets who have filed UCC-1 financing statements against the Debtor, or who, to the Debtor's knowledge, have asserted any liens on any of the Debtor's assets; (v) the Internal Revenue Service and all taxing authorities of states in which the Debtor conducts business; (vi) certain other parties identified in the certificates of service filed with the Court.

The Court held an interim hearing with respect to the Motion on November 30, 2020 (the "First Interim Hearing").

Upon the conclusion of the First Interim Hearing, the Court entered an order on December 1, 2020 (the "First Interim Order", Docket No. 17) granting the relief sought in the Motion on an interim basis.

The First Interim Order provided that a further hearing regarding the relief sought in the Motion would be scheduled for December 14, 2020.

On December 14, 2020, Court held a hearing (the "Second Interim Hearing" and collectively, with the First Interim Hearing, the "Interim Hearings") during which the Debtor and DIP Secured Lender requested that the Court further approve the relief requested in the Motion an on interim basis, on the terms set forth herein and in the DIP Term Sheet, pending a final hearing to consider the relief requested in the DIP Motion.

After the Motion and the proceedings before the Court at the Interim Hearings; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, carried forward to a final hearing considering the Motion, or overruled by the Court as reflected on the record established by the Debtor at the Interim Hearings;

#80876077_v2

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A. On November 29, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code");[3]

B. On December 1, 2020, the Court entered the First Interim Order, granting the relief sought in the Motion on an interim basis;

C. The Debtor has continued in the management and operation of its business pursuant to sections 1107 and 1108, and no trustee or examiner has been appointed;

D. The Debtor gave notice of the Motion and Interim Hearings as required under the Federal Rules of Bankruptcy Procedure and any applicable local rules of this Court;

E. The Court has core jurisdiction over the Debtor's bankruptcy case, the Motion, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

F. As of the date hereof, the United States Trustee has not yet appointed an official committee of unsecured creditors in this case pursuant to section 1102 (a "Statutory Committee");

G. The Debtor has admitted, represented and stipulated, the following (collectively, the "Stipulations"):

---

[2] To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.
[3] Unless otherwise noted, all statutory references are to the Bankruptcy Code.

#80876077_v2

U.S. Bankruptcy Court - Hawaii   #20-01383   Dkt # 77   Filed  12/14/20   Page 45 of 87

(1)     the DIP Secured Lender, following entry of the First Interim Order, provided a DIP Facility Advance to the Debtor in the amount of $399,310.43 (the "First Interim DIP Advance"), which amount remains outstanding and constitutes a valid obligation from the Debtor to the DIP Secured Lender, without offset, recoupment, or counterclaim of any kind;

(2)     the DIP Secured Lender is willing to provide additional postpetition financing advance(s) to the Debtor in an amount not to exceed [$1,754,996.16] (the "Second Interim DIP Advances" and collectively with the First Interim DIP Advance, the "Interim DIP Advances" with each individually, an "Interim DIP Advance") only through the DIP Facility and the DIP Financing Documents;

(3)     the Debtor reasonably and in good faith believes that the use of the DIP Cash Collateral and the Interim DIP Advances are sufficient to fund all projected legitimate and allowable expenses of its Chapter 11 case from the Petition Date until the Final Hearing on the Motion; and

(4)     the Debtor is a duly organized, validly existing legal entity and has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral. The Debtor has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the DIP Financing Documents and this Order and to incur the obligations provided for therein with respect to the Interim DIP Advances. Except as may be explicitly required in the DIP Financing Documents, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other Person (other than the

- 4 -

DIP Secured Lender), which has not already been obtained or done, is required in connection with the execution, delivery and performance by the Debtor of any of the documents required as a condition to the validity or enforceability of the DIP Financing Documents, other than entry by this Court of this Order;

H.      The Debtor is unable to obtain sufficient levels of unsecured credit allowable under section 503(b)(1) as an administrative expense necessary to maintain and conduct its business until the final hearing on the Motion;

I.      All cash of the Debtor constitutes DIP Cash Collateral;

J.      The Debtor is unable to obtain required secured credit prior to the Final Hearing on the Motion except under the terms and conditions provided in this Order;

K.      It is in the best interest of the Debtor's estate that the Debtor be allowed to continue to be a party to the DIP Facility and obtain the Interim DIP Advances from the DIP Secured Lender, and use the DIP Cash Collateral subject to and in accordance with the terms of this Order and the DIP Financing Documents, on an interim basis under the terms and conditions set forth herein and in the DIP Financing Documents, as such is necessary to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing;

L.      The Debtor believes that the extension of the Interim DIP Advances is fair, reasonable, in good faith, negotiated at arm's length, reflects the Debtor's exercise of prudent business judgment, and is supported by reasonably equivalent value and fair consideration;

M.      The DIP Secured Lender is entitled to the protections of section 364(e) of the Bankruptcy Code with respect to the Interim DIP Advances;

U.S. Bankruptcy Court - Hawaii   #20-01383   Dkt # 77   Filed  12/14/20   Page 47 of 87

N.     The Debtor requires access to the Interim DIP Advances in order to satisfy administrative expenses associated with the operation of its business as a going concern and other costs relating to the administration of this chapter 11 case, and in order to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing;

O.     The DIP Secured Lender is unwilling to provide the Interim DIP Advances except under the terms of the DIP Financing Documents and this Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Order will not be affected by any subsequent reversal or modification of this Order or any other order, as provided in section 364(e), which is applicable to the Interim DIP Advances and the use of DIP Cash Collateral contemplated in this Order; and

P.     Good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.     The Motion is granted on an interim basis effective as of the Petition Date. The Debtor is authorized, pursuant to sections 363 and 364, to borrow the Interim DIP Advances, enter into the DIP Facility and DIP Financing Documents, execute such other and additional documents necessary or desired to implement the DIP Facility or DIP Financing Documents, and use the DIP Cash Collateral, and the proceeds and products thereof, pursuant to the terms and conditions of the DIP Financing Documents and this Order to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing. The Debtor shall use the Interim DIP Advances only for the purposes and in the amounts set forth in the DIP Term Sheet attached hereto as Exhibit B and

- 6 -

Budget attached hereto as Exhibit A, subject to the terms and conditions set forth in the DIP Financing Documents.

2.      The Debtor shall pay to the DIP Secured Lender all DIP Facility advances, together with interest thereon accruing pursuant to the DIP Financing Documents, in full, in cash, at the times set forth in the Budget and DIP Financing Documents, but no later than the Termination Date (as defined in the DIP Term Sheet). All unpaid principal, interest, fees, costs and expenses in respect of the Interim DIP Advance shall be due and payable in full by the Debtor on the Termination Date (as defined in the DIP Term Sheet), whether at maturity, upon acceleration or otherwise and if such amounts are not paid in full in cash, interest, fees, costs, and expenses in respect of the DIP Facility shall continue to accrue until paid in full.

3.      With respect to the Budget:

(a)      the Debtors' actual Budget line items shall each be adhered to, by line item, on a weekly basis and a cumulative basis for the Budget (as defined below) period then ending, subject to the Budget Variance described below, provided, however, that amounts not disbursed in a line item shall be deemed to roll over to subsequent weeks;

(b)      actual amounts for each Budget line item may not vary unfavorably from the applicable Budget by more than ten percent (10.0%) per line item on a weekly basis (the "Budget Variance");

(c)      for all fees within the Budget attributable to professionals of the Debtor or Statutory Committee, the Debtor shall reflect the fees for each separately retained professional of the Debtor or Statutory Committee on its own line item;

(d)      Any fees payable to professionals retained by the DIP Secured Lender set forth in the Budget shall not be limited by the amounts set forth in the Budget.

- 7 -

4.      No proceeds of the Interim DIP Advances shall be used to (a) permit the Debtor or any other party-in-interest to challenge, contest, or institute any proceeding to determine (i) the validity, perfection, or priority of any security interests in favor of any of the DIP Secured Lender or (ii) the enforceability of the Debtor's obligations or the obligations of any guarantor under the DIP Financing Documents; (b) investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the DIP Secured Lender or any of its agents, attorneys, advisors or representatives, including, without limitation, claims or causes of action relating to lender liability or subordination claims; (c) investigate, commence, prosecute, or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtor or any guarantor under the DIP Financing Documents, or (d) fund any acquisitions, capital expenditures, capital leases, or similar expenditures other than those specifically set forth in the Budget.

5.      Pursuant to sections 363 and 364(c) and (d), the Interim DIP Advances shall be allowed administrative expenses of the Debtor's estate, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor and over all administrative expenses or charges against property arising in the Debtor's Chapter 11 case and any superseding Chapter 7 case including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114, subject and junior only to the payment of UST Fees (as hereinafter defined) (such claim, the "DIP Superpriority Claim"). The time of payment of the Interim DIP Advances shall not be altered, extended or impaired without the consent of the DIP

#80876077_v2

U.S. Bankruptcy Court - Hawaii   #20-01383   Dkt # 77   Filed  12/14/20   Page 50 of 87

Secured Lender by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which hereafter may be entered.

6. The reasonable fees and expenses of the DIP Secured Lender, regardless of whether such amounts were incurred prior to or after the Petition Date, shall be payable (without further notice, motion, or application to, order of, or hearing before, the Court) within ten (10) days after delivery to the Debtor and U.S. Trustee of a summary statement of the DIP Secured Lender professional fees and expenses subject to reimbursement by the Debtor; provided, however, that the Debtor and the U.S. Trustee shall have ten (10) days following the receipt of such professional fee statement to object to the reasonableness of the fees and expenses included therein. If any objection is asserted, the Court shall decide the issue and the Debtor shall not be required to pay any disputed portion of such fees or expenses until the matter is resolved. For the avoidance of doubt, failure to pay such disputed fees or expenses while the Court resolves such dispute will not be an Event of Default, even if it is determined by the Court that such payment should have been made. The DIP Secured Lender shall have the right to charge the DIP Facility for any such fees and costs payable by the Debtor; and once charged, such costs shall be added to the total balance of DIP Facility obligations.

7. Pursuant to sections 363, 364(c), and 364(d), as security for the Interim DIP Advances and other postpetition costs payable under the DIP Financing Documents, the Debtor is hereby authorized to and is hereby deemed to grant to the DIP Secured Lender a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien," and as so granted to the DIP Secured Lender, the "DIP Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and

#80876077_v2

the proceeds and products thereof (collectively, the "DIP Collateral"), excluding any causes of action that could be brought pursuant to sections 544, 545, 547, or 548 of the Bankruptcy Code, or any applicable state fraudulent transfer statutes (the "Avoidance Actions").

8.      Pursuant to sections 364(c) and (d), the DIP Lien shall be a first priority senior and priming lien on the DIP Collateral, subject and junior only to (a) the payment of UST Fees and Chapter 7 Trustee Fees (as hereafter defined) and (b) valid, enforceable, properly perfected, and unavoidable prepetition Liens that existed on the Petition Date ("Senior Third Party Liens"). The DIP Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estates under section 551, and in no event shall any person or entity who pays (or causes to be paid) the Interim DIP Advances be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, the DIP Secured Lender by the terms of the DIP Financing Documents until such time as the obligations under the DIP Financing Documents and this Order are indefeasibly paid in full, in cash. The DIP Lien shall not be subject or subordinate to Liens arising after the Petition Date, other than Liens granted pursuant to this Order to the extent set forth in this Order.

9.      Provided that each of the conditions set forth in this Paragraph are satisfied, the Debtor shall be authorized to use the DIP Cash Collateral only in accordance with the terms of the Budget, this Order, and the other DIP Financing Documents. The satisfaction of each of the following conditions shall constitute a condition to the Debtors' authorization to use any DIP Cash Collateral: (i) no Event of Default under (and as defined in the DIP Term Sheet) shall exist or be continuing; and (ii) the Termination Date (as defined in the DIP Term Sheet) shall not have occurred. If, on any date, any of such conditions is not satisfied, then the Debtor shall not be

- 10 -

authorized to use any DIP Cash Collateral unless and until: (i) such use is consented to by DIP Secured Lender in its sole and absolute discretion; or (ii) such use of DIP Cash Collateral is authorized by the Court. Absent further order of the Court, if the Termination Date occurs, then the Debtor shall remit to the DIP Secured Lender, any DIP Cash Collateral then in the Debtor's possession for application to the DIP Facility obligations in a manner selected by the DIP Secured Lender in its sole discretion.

10.     The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtor and the DIP Secured Lender to implement and perform the DIP Facility and the DIP Financing Documents with respect to the Interim DIP Advances, including without limitation the provisions thereof with respect to the collection of Proceeds and (b) the creation and perfection of all Liens granted or permitted by this Order. The Debtor and the holders of any DIP Lien shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect any such liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or take any other action to perfect any such Liens, which shall be and are deemed valid, binding, enforceable and automatically perfected by the docket entry of the First Interim Order by the Clerk of the Court. If, however, the holder of any DIP Lien in its sole and absolute discretion shall elect for any reason to enter into, file, record or serve any such financing statements or other documents with respect to any such Lien, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of the First Interim Order by the Clerk of the Court.

11.     The DIP Liens and DIP Superpriority Claims shall be subject to right of payment of unpaid postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee, as agreed to by the U.S.

- 11 -

Trustee or as determined by the Court (such fees, "UST Fees") and (if the Debtor's case is converted to chapter 7) the statutory compensation of a chapter 7 trustee in an amount not to exceed $25,000.00 (the "Chapter 7 Trustee Fees"); provided, however, that UST Fees and Chapter 7 Trustee Fees shall first be paid with any unencumbered funds available (if any). Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Secured Lender with respect to the UST Fees to the entry of the Final Order shall be Interim DIP Advances.

12.     Neither the payment of any professional fees incurred by professionals of the Debtor or Statutory Committee, nor the use of any proceeds of the Interim DIP Advances, shall include payment for any fees and expenses, if any, of any such professionals incurred directly or indirectly, in respect of, arising from or relating to:

        A.     the initiation, joinder, support, or prosecution of any action contesting the Interim DIP Advances, or the validity of any liens granted to the DIP Secured Lender;

        B.     preventing, hindering or otherwise delaying (or supporting any other person or entity in preventing, hindering or otherwise delaying), whether directly or indirectly, the exercise by DIP Secured Lender of any of its rights and remedies under the Interim Order or DIP Financing Documents, including, without limitation, any attempt to prevent, hinder or delay (or supporting any other person or entity in preventing, hindering or delaying) the submission of any credit bid by the DIP Secured Lender;

        C.     the commencement, support, or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Secured Lender, or any of its officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Secured Lender;

- 12 -

D. any request to borrow money other than pursuant to the terms of the Interim Order, the Final Order, or the DIP Financing Documents;

E. with respect to the Debtor, any of the Debtor's Chapter 11 Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtor or its estate with respect to any matter to be specified as not subject to challenge by the Debtor pursuant to this Order or the Final Order; or

F. For any other purpose for which proceeds of the Interim DIP Advance may not be used pursuant to the DIP Term Sheet.

13. Upon entry of the Final Order, effective as of the time of commencement of the Debtor's bankruptcy cases on the Petition Date:

A. The Debtor waives irrevocably all claims and rights, if any, it or its estate might otherwise assert against the DIP Collateral pursuant to Bankruptcy Code sections 506(c), 105(a) or any other applicable law;

B. no entity in the course of the Debtor's bankruptcy case shall be permitted to recover from the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtor or its estate) any cost or expense of preservation or disposition of the DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

- 13 -

C.     no entity shall be permitted to recover from the DIP Collateral, or assert against the DIP Secured Lender, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy cases, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget; and

D.     the DIP Secured Lender shall not be subject to the "equities of the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any DIP Collateral.

14.     So long as the Interim DIP Advances remain outstanding, unless consented to in writing by the DIP Secured Lender, the Debtor shall not seek entry of any further order in its Chapter 11 Case which authorizes (a) the obtaining of credit or the incurring of indebtedness pursuant to sections 364(c) or 364(d) of the Bankruptcy Code that does not repay the DIP Facility in full, in cash, (b) the return of goods pursuant to section 546(h) of the Bankruptcy Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to section 553 of the Bankruptcy Code or otherwise, or (c) except with respect to Senior Third Party Liens, any other grant of rights against the Debtor and/or its estate that is secured by a Lien in the DIP Collateral or is entitled to superpriority administrative status that does not repay the DIP Facility in full, in cash.

15.     Upon the occurrence of: (i) an Event of Default (as such term is defined in the DIP Term Sheet); or (ii) the Debtors' failure to comply with the terms of this Order or the Final Order (including, without limitation, its failure to comply with the Budget, subject to any approved variances), and the giving of written notice thereof by the DIP Secured Lender to counsel to the Debtor, the Statutory Committee (if any), and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the

- 14 -

"<u>Default Notice</u>"), then, (i) the DIP Secured Lender shall be fully authorized, in its sole discretion to cease making Interim DIP Advances to the Debtor, (ii) the DIP Secured Lender shall be fully authorized, in its sole discretion, to terminate the Debtor's use of the DIP Collateral (including without limitation DIP Cash Collateral) pursuant to this Order and the Budget, and/or (iii) the DIP Secured Lender shall be fully authorized, in its sole discretion to immediately terminate the DIP Facility and demand repayment of the Interim DIP Advances then outstanding.

16.     Further, upon the occurrence of an Event of Default and transmission of a Default Notice or upon the Termination Date:

A.     the DIP Secured Lender shall have the right, free of the restrictions of sections 362 or under any other section of the Bankruptcy Code or applicable law or rule (including, without limitation, Bankruptcy Rule 4001(a)), to take immediate reasonable action to protect the DIP Collateral from harm, theft and/or dissipation;

B.     with respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Statutory Committee (if any), and the U.S. Trustee shall have five (5) business days from the date of the Default Notice (the "<u>Remedy Notice Period</u>") to obtain an order of the Court on notice to the DIP Secured Lender (a) enjoining or restraining the DIP Secured Lender from taking action or exercising rights and remedies (other than any rights and remedies set forth in Paragraph 15 herein, which may be exercised immediately upon the satisfaction of the conditions set forth in such paragraph) based upon the Event of Default specified in the Default Notice; or (b) challenging whether an Event of Default in the Default Notice has occurred or is continuing without cure (a "<u>Restraint on Remedies</u>"). During the Remedy Notice Period, the DIP Secured Lender shall refrain from exercising its rights and remedies (other than those which may be exercised upon the

- 15 -

satisfaction of the conditions set forth in Paragraph 15 and below). Immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the Court, or with respect to and upon the Maturity Date, immediately:

    (1)    the DIP Secured Lender shall have the right, free of the restrictions of section 362 or under any other section of the Bankruptcy Code or Bankruptcy Rules (including, without limitation, Bankruptcy Rule 4001(a)), to exercise contractual, legal and equitable rights and remedies as to all or such part of the DIP Collateral as it shall elect, and to apply the Proceeds (as such term is defined below) of the DIP Collateral to the repayment of the DIP Facility obligations; and

    (2)    the DIP Secured Lender, should it so elect in its sole and absolute discretion as exercised by the filing of an appropriate statement with the Court, shall be deemed to have been granted "peaceful possession" of, and right of access to, all or any portion of the DIP Collateral, by the Debtor.

17.    The Debtor shall provide the DIP Secured Lender with (i) all financial statements, certificates, and reports required pursuant to the DIP Term Sheet in accordance with the timeframes specified therein and (ii) such additional information as the DIP Secured Lender shall reasonably request from the Debtor. The DIP Secured Lender and its representatives shall have reasonable access to the Debtor's business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral and/or to inspect the financial records and other records of the Debtors concerning the operation of the Debtors' business.

18.    For purposes of this Order, (a) "Proceeds" shall mean both (i) proceeds (as defined in the Uniform Commercial Code for the State of New York) and (ii) any and all payments, proceeds or other consideration realized upon the sale, liquidation, realization, collection or other

- 16 -

manner of disposition of the DIP Collateral, whether in the ordinary course of the Debtors' business (including without limitation accounts, receivables, and other proceeds arising from the Debtors' sales of goods and/or performance of services) or other than in the ordinary course of the Debtors' business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection or other manner of disposition of DIP Collateral other than in the ordinary course of the Debtors' business, including without limitation any sale authorized pursuant to section 363.

19.     [Intentionally deleted for purposes of the Interim DIP Advances]

20.     The Debtor and any successors to the Debtor, including without limitation any successor trustee or trustees, shall assign or direct to the DIP Secured Lender any and all Proceeds realized in any Disposition of any DIP Collateral outside the ordinary course of business, and immediately deliver any and all such Proceeds which come into their possession to the DIP Secured Lender in the form received; provided, however, that the foregoing shall be subject in all respects to (a) payment of the UST Fees and Chapter 7 Trustee Fees and (b) the priorities of the DIP Lien granted by this Order. The foregoing is without prejudice to the rights of (a) the DIP Secured Lender, the Statutory Committee (if any), or any other party to object to any proposed Disposition, or (b) any third party with respect to the allocated Proceeds of any Disposition of Collateral encumbered by a Senior Third Party Lien. The DIP Secured Lender is hereby authorized to credit-bid all or any of the obligations under the DIP Facility at any Disposition of any DIP Collateral.

21.     All Proceeds retained by the DIP Secured Lender shall be applied to the repayment of the DIP Facility obligations, in a manner selected by the DIP Secured Lender, until such obligations are paid in full; provided, however, that the foregoing shall be subject in all respects

- 17 -

to the terms and the priorities of liens under this Order. Such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability.

22.     In making decisions to make any Interim DIP Advance to the Debtor pursuant to the DIP Facility or in taking any other actions reasonably related to this Order or the DIP Financing Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Secured Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "control person", "responsible person" or other "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute), and the DIP Secured Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Secured Lender and the Debtor.

23.     This Order shall be binding upon and inure to the benefit of the DIP Secured Lender, the Debtor, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. Except as set forth herein with respect to the UST Fees and the Chapter 7 Trustee Fees, no rights are created under this Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

24.     Any order dismissing the Debtor's Chapter 11 Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy

- 18 -

Code) that (a) the DIP Secured Lender's liens and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Interim DIP Advances are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim and the DIP Liens.

25.     To the extent that any of the provisions of this Order shall conflict with any provisions of the DIP Term Sheet, this Order is deemed to control and supersede the conflicting provisions therein.

26.     The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise. Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Fed R. Bankr. P. 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause.

27.     Nothing in this Order shall preclude the Court from entering a Final Order containing provisions inconsistent with or contrary to the provisions of this Order, provided, however, that the DIP Secured Lender shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to section 364(e), with respect to the Interim DIP Advances. The DIP Lien and the priority afforded the Interim DIP Advances, as set forth in this Order, shall be binding on the Debtor and any successor trustee or trustees even if this Order is reversed or modified on appeal with respect to all loans, advances, and other financial accommodations made by them pursuant to this Order. Except as provided herein, no Proceeds or DIP Cash Collateral may be used by any party in interest seeking to modify any of the rights granted to DIP Secured Lender hereunder or in the DIP Financing Documents.

#80876077_v2

28.     The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtor's performance under this Order or the DIP Financing Documents, including, without limitation, (a) the execution of the DIP Financing Documents, and (b) the payment of the fees and other expenses described herein or in the DIP Financing Documents as such become due. The Debtor is further authorized to continue to negotiate any supplemental or modified DIP Facility terms concerning potential future advances after the Interim DIP Advances, as well as the terms of any subsequent interim or final orders related to any such potential DIP Facility advances, and both the Debtor and DIP Secured Lender reserve all rights regarding such negotiations.

29.     The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on terms and conditions to which the Debtor and DIP Secured Lender have agreed. Thus, each of the terms and conditions constitutes a part of the authorization under sections 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code, regardless of (i) any stay, modification, amendment, vacation, or reversal of this Order or the DIP Financing Documents or any term hereunder or thereunder; (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of this chapter 11 case.

30.     A final hearing with respect to the Motion is scheduled for January [--], 2020 at [--[--:-- -.m]. (the "Final Hearing") before the Honorable Robert J. Faris, United States Bankruptcy Judge. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Rule 2002 request for service. Any party in interest objecting to the

- 20 -

relief sought at the Final Hearing shall file written objections by December 11, 2020, and serve

them on (i) the Debtor's proposed counsel; (ii) the DIP Secured Lender's counsel, Holland &

Knight LLP, attn: Brent McIlwain, 200 Crescent Court, Suite 1600, Dallas, TX 75201 and [H&K

Local Counsel]; and (iii) the Office of the U.S. Trustee.

**END OF ORDER**

Submitted by:
CHUCK C. CHOI
ALLISON A. ITO
Email:  cchoi@hibklaw.com
Email:  aito@hibklaw.com
TOPA FINANCIAL CENTER
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone:  (808) 533-1877
Facsimile:  (808) 566-6900
Proposed Attorney for the Debtor

# EXHIBIT F

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| In re | Chapter 11 |
| WING SPIRIT, INC., | Case No. 20-1383 |
| Debtor | Re: Docket No. |

**SECOND ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING ON AN INTERIM BASIS, GRANTING SENIOR POSTPETITION SECURITY INTERESTS AND ACCORDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTIONS 364(c) AND 364(d) OF THE BANKRUPTCY CODE, (2) AUTHORIZING THE USE OF CASH COLLATERAL, (3) MODIFYING THE AUTOMATIC STAY, AND (4) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtor (the "Debtor") seeking, among other things:

(1) authority pursuant to sections 363 and 364(c) and (d) to obtain debtor-in-possession secured financing (the "DIP Facility") pursuant to the following terms and agreements (collectively, the "DIP Financing Documents"): (a) this Order, and any final order entered by the Court with respect to the Motion (the "Final Order"), and (b) the *Wing Spirit, Inc., Terms and Conditions of Proposed Senior Secured, Super-Priority Debtor-in-Possession Credit Facility*, attached hereto as Exhibit B, as amended, modified, and/or supplemented (the "DIP Term Sheet"),[1] by and among the Debtor, as borrower and debtor-in-possession, HT Holdings Co. Limited (the "DIP Secured Lender");

(2) the grant to the DIP Secured Lender of superpriority administrative claim status pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Order;

(3) authorization for the Debtor's use of cash collateral (the "DIP Cash Collateral"), as contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein;

(4) modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3) and 6004(h); and

(5) a final hearing setting for the Motion for entry of an order authorizing the DIP Facility and use of DIP Cash Collateral on a final basis.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Term Sheet.

Notice of the Motion, the relief requested therein, and the First Interim Hearing and Second Interim Hearing (as defined below) (the "Notice Notices") having been served by the Debtor in accordance with Bankruptcy Rule 4001(c) on: (i) the DIP Secured Lender; (ii) the United States Trustee for the District of Hawaii (the "U.S. Trustee"); (iii) the holders of the twenty (20) largest unsecured claims against the Debtor's estate; (iv) all parties known to the Debtor who hold any liens or security interest in the Debtor's assets who have filed UCC-1 financing statements against the Debtor, or who, to the Debtor's knowledge, have asserted any liens on any of the Debtor's assets; (v) the Internal Revenue Service and all taxing authorities of states in which the Debtor conducts business; (vi) certain other parties identified in the certificates of service filed with the Court.

The Court held an interim hearing with respect to the Motion on November 30, 2020 (the "First Interim Hearing").

Upon the conclusion of the First Interim Hearing, the Court entered an order on December 1, 2020 (the "First Interim Order", Docket No. 17) granting the relief sought in the Motion on an interim basis.

The First Interim Order provided that a further hearing regarding the relief sought in the Motion would be scheduled for December 14, 2020.

On December 14, 2020, Court held a hearing (the "Second Interim Hearing" and collectively, with the First Interim Hearing, the "Interim Hearings") during which the Debtor and DIP Secured Lender requested that the Court further approve the relief requested in the Motion an on interim basis, on the terms set forth herein and in the DIP Term Sheet, pending a final hearing to consider the relief requested in the DIP Motion.

After the Motion and the proceedings before the Court at the Interim Hearing Hearings; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, carried forward to a final hearing considering the Motion, or overruled by the Court as reflected on the record established by the Debtors Debtor at the Interim Hearing Hearings;

- 2 -

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.    On November 29, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code");[3]

B.    On December 1, 2020, the Court entered the First Interim Order, granting the relief sought in the Motion on an interim basis;

C.    ~~B.~~ The Debtor has continued in the management and operation of its business pursuant to sections 1107 and 1108, and no trustee or examiner has been appointed;

D.    ~~C.~~ The Debtor gave notice of the Motion and Interim Hearings as required under the Federal Rules of Bankruptcy Procedure and any applicable local rules of this Court;

E.    ~~D.~~ The Court has core jurisdiction over the Debtor's bankruptcy case, the Motion, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;

F.    ~~E.~~ As of the date hereof, the United States Trustee has not yet appointed an official committee of unsecured creditors in this case pursuant to section 1102 (a "Statutory Committee");

---

[2] To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.
[3] Unless otherwise noted, all statutory references are to the Bankruptcy Code.

#80876077_v2

U.S. Bankruptcy Court - Hawaii  #20-01383  Dkt # 77  Filed  12/14/20  Page 67 of 87

G. ~~F.~~ The Debtor has admitted, represented and stipulated, the following (collectively, the "Stipulations"):

(1) the DIP Secured Lender, following entry of the First Interim Order, provided a DIP Facility Advance to the Debtor in the amount of $399,310.43 (the "First Interim DIP Advance"), which amount remains outstanding and constitutes a valid obligation from the Debtor to the DIP Secured Lender, without offset, recoupment, or counterclaim of any kind;

(2) ~~(1)~~ the DIP Secured Lender is willing to provide ~~immediate~~additional postpetition financing advance(s) to the Debtor in ~~the~~an amount ~~of $399,310.43~~not to exceed [$1,754,996.16] (the "Second Interim DIP Advances" and collectively with the First Interim DIP Advance, the "Interim DIP Advances" with each individually, an "Interim DIP Advance") only through the DIP Facility and the DIP Financing Documents;

(3) ~~(2)~~the Debtor reasonably and in good faith believes that the use of the DIP Cash Collateral and the Interim DIP Advances are sufficient to fund all projected legitimate and allowable expenses of its Chapter 11 case from the Petition Date until the Final Hearing on the Motion; and

(4) ~~(3)~~the Debtor is a duly organized, validly existing legal entity and has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral. The Debtor has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the DIP Financing Documents and this Order and to incur the obligations provided for therein with respect to the Interim DIP ~~Advance~~Advances. Except as

- 4 -

may be explicitly required in the DIP Financing Documents, no consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other Person (other than the DIP Secured Lender), which has not already been obtained or done, is required in connection with the execution, delivery and performance by the Debtor of any of the documents required as a condition to the validity or enforceability of the DIP Financing Documents, other than entry by this Court of this Order;

H. ~~G.~~ The Debtor is unable to obtain sufficient levels of unsecured credit allowable under section 503(b)(1) as an administrative expense necessary to maintain and conduct its business until the final hearing on the Motion;

I. ~~H.~~ All cash of the ~~Debtors~~Debtor constitutes DIP Cash Collateral;

J. ~~I.~~ The Debtor is unable to obtain required secured credit prior to the Final Hearing on the Motion except under the terms and conditions provided in this Order;

K. ~~J.~~ It is in the best interest of the Debtor's estate that the Debtor be allowed to ~~enter into~~continue to be a party to the DIP Facility ~~in order to~~and obtain the Interim DIP Advances from the DIP Secured Lender, and use the DIP Cash Collateral subject to and in accordance with the terms of this Order and the DIP Financing Documents, on an interim basis under the terms and conditions set forth herein and in the DIP Financing Documents, as such is necessary to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing;

- 5 -

L.    ~~K.~~ The Debtor believes that the extension of the Interim DIP Advances is fair, reasonable, in good faith, negotiated at arm's length, reflects the Debtor's exercise of prudent business judgment, and is supported by reasonably equivalent value and fair consideration;

M.    ~~L.~~ The DIP Secured Lender is entitled to the protections of section 364(e) of the Bankruptcy Code with respect to the Interim DIP Advances;

N.    ~~M.~~ The Debtor requires access to the Interim DIP Advances in order to satisfy administrative expenses associated with the operation of its business as a going concern and other costs relating to the administration of this chapter 11 case, and in order to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing;

O.    ~~N.~~ The DIP Secured Lender is unwilling to provide the Interim DIP Advances except under the terms of the DIP Financing Documents and this Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Order will not be affected by any subsequent reversal or modification of this Order or any other order, as provided in section 364(e), which is applicable to the Interim DIP Advances and the use of DIP Cash Collateral contemplated in this Order; and

P.    ~~O.~~ Good and sufficient cause exists for the issuance of this Order, to prevent immediate and irreparable harm to the Debtor's estate.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

#80876077_v2

1. The Motion is granted on an interim basis effective as of the Petition Date. The Debtor is authorized, pursuant to sections 363 and 364, to borrow the Interim DIP Advances, enter into the DIP Facility and DIP Financing Documents, execute such other and additional documents necessary or desired to implement the DIP Facility or DIP Financing Documents, and use the DIP Cash Collateral, and the proceeds and products thereof, pursuant to the terms and conditions of the DIP Financing Documents and this Order to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing. The Debtor shall use the Interim DIP Advances only for the purposes and in the amounts set forth in the DIP Term Sheet attached hereto as Exhibit B and Budget attached hereto as Exhibit A, subject to the terms and conditions set forth in the DIP Financing Documents.

2. The Debtor shall pay to the DIP Secured Lender all DIP Facility advances, together with interest thereon accruing pursuant to the DIP Financing Documents, in full, in cash, at the times set forth in the Budget and DIP Financing Documents, but no later than the Termination Date (as defined in the DIP Term Sheet). All unpaid principal, interest, fees, costs and expenses in respect of the Interim DIP Advance shall be due and payable in full by the Debtor on the Termination Date (as defined in the DIP Term Sheet), whether at maturity, upon acceleration or otherwise and if such amounts are not paid in full in cash, interest, fees, costs, and expenses in respect of the DIP Facility shall continue to accrue until paid in full.

3. With respect to the Budget:

(a)     the Debtors' actual Budget line items shall each be adhered to, by line item, on a weekly basis and a cumulative basis for the Budget (as defined below) period then ending, subject to the Budget Variance described below, provided, however, that amounts not disbursed in a line item shall be deemed to roll over to subsequent weeks;

- 7 -

(b)     actual amounts for each Budget line item may not vary unfavorably from the applicable Budget by more than ten percent (10.0%) per line item on a weekly basis (the "Budget Variance");

(c)     for all fees within the Budget attributable to professionals of the Debtor or Statutory Committee, the Debtor shall reflect the fees for each separately retained professional of the Debtor or Statutory Committee on its own line item;

(d)     Any fees payable to professionals retained by the DIP Secured Lender set forth in the Budget shall not be limited by the amounts set forth in the Budget.

4.     No proceeds of the Interim DIP Advances shall be used to (a) permit the Debtor or any other party-in-interest to challenge, contest, or institute any proceeding to determine (i) the validity, perfection, or priority of any security interests in favor of any of the DIP Secured Lender or (ii) the enforceability of the Debtor's obligations or the obligations of any guarantor under the DIP Financing Documents; (b) investigate, commence, prosecute or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim, motion, proceeding or cause of action against the DIP Secured Lender or any of its agents, attorneys, advisors or representatives, including, without limitation, claims or causes of action relating to lender liability or subordination claims; (c) investigate, commence, prosecute, or defend (or support any other person or entity in investigating, commencing, prosecuting, or defending) any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtor or any guarantor under the DIP Financing Documents, or (d) fund any acquisitions, capital expenditures, capital leases, or similar expenditures other than those specifically set forth in the Budget.

#80876077_v2

5.     Pursuant to sections 363 and 364(c) and (d), the Interim DIP Advances shall be allowed administrative expenses of the Debtor's estate, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor and over all administrative expenses or charges against property arising in the Debtor's Chapter 11 case and any superseding Chapter 7 case including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114, subject and junior only to the payment of UST Fees (as hereinafter defined) (such claim, the "DIP Superpriority Claim"). The time of payment of the Interim DIP Advances shall not be altered, extended or impaired without the consent of the DIP Secured Lender by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which hereafter may be entered.

6.     The reasonable fees and expenses of the DIP Secured Lender, regardless of whether such amounts were incurred prior to or after the Petition Date, shall be payable (without further notice, motion, or application to, order of, or hearing before, the Court) within ten (10) days after delivery to the Debtor and U.S. Trustee of a summary statement of the DIP Secured Lender professional fees and expenses subject to reimbursement by the Debtor; provided, however, that the Debtor and the U.S. Trustee shall have ten (10) days following the receipt of such professional fee statement to object to the reasonableness of the fees and expenses included therein. If any objection is asserted, the Court shall decide the issue and the Debtor shall not be required to pay any disputed portion of such fees or expenses until the matter is resolved. For the avoidance of doubt, failure to pay such disputed fees or expenses while the Court resolves such dispute will not be an Event of Default, even if it is determined by the Court that such payment should have been made. The DIP Secured Lender shall have the right to charge the DIP Facility

- 9 -

for any such fees and costs payable by the Debtor; and once charged, such costs shall be added to the total balance of DIP Facility obligations.

7.      Pursuant to sections 363, 364(c), and 364(d), as security for the Interim DIP Advances and other postpetition costs payable under the DIP Financing Documents, the Debtor is hereby authorized to and is hereby deemed to grant to the DIP Secured Lender a valid, binding and enforceable lien, mortgage and/or security interest (a "<u>Lien</u>," and as so granted to the DIP Secured Lender, the "<u>DIP Lien</u>") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "<u>DIP Collateral</u>"), excluding any causes of action that could be brought pursuant to sections 544, 545, 547, or 548 of the Bankruptcy Code, or any applicable state fraudulent transfer statutes (the "<u>Avoidance Actions</u>").

8.      Pursuant to sections 364(c) and (d), the DIP Lien shall be a first priority senior and priming lien on the DIP Collateral, subject and junior only to (a) the payment of UST <u>Fees and Chapter 7 Trustee</u> Fees (as hereafter defined) and (b) valid, enforceable, properly perfected, and unavoidable prepetition Liens that existed on the Petition Date ("<u>Senior Third Party Liens</u>"). The DIP Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estates under section 551, and in no event shall any person or entity who pays (or causes to be paid) the Interim DIP Advances be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, the DIP Secured Lender by the terms of the DIP Financing Documents until such time as the obligations under the DIP Financing Documents and this Order are indefeasibly paid in full, in cash. The DIP Lien shall not be

#80876077_v2

subject or subordinate to Liens arising after the Petition Date, other than Liens granted pursuant to this Order to the extent set forth in this Order.

9.    Provided that each of the conditions set forth in this Paragraph are satisfied, the Debtor shall be authorized to use the DIP Cash Collateral only in accordance with the terms of the Budget, this Order, and the other DIP Financing Documents. The satisfaction of each of the following conditions shall constitute a condition to the Debtors' authorization to use any DIP Cash Collateral: (i) no Event of Default under (and as defined in the DIP Term Sheet) shall exist or be continuing; and (ii) the Termination Date (as defined in the DIP Term Sheet) shall not have occurred. If, on any date, any of such conditions is not satisfied, then the Debtor shall not be authorized to use any DIP Cash Collateral unless and until: (i) such use is consented to by DIP Secured Lender in its sole and absolute discretion; or (ii) such use of DIP Cash Collateral is authorized by the Court. Absent further order of the Court, if the Termination Date occurs, then the Debtor shall remit to the DIP Secured Lender, any DIP Cash Collateral then in the Debtor's possession for application to the DIP Facility obligations in a manner selected by the DIP Secured Lender in its sole discretion.

10.    The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtor and the DIP Secured Lender to implement and perform the DIP Facility and the DIP Financing Documents with respect to the Interim DIP Advances, including without limitation the provisions thereof with respect to the collection of Proceeds and (b) the creation and perfection of all Liens granted or permitted by this Order. The Debtor and the holders of any DIP Lien shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect any such liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or take any other action to perfect any such Liens, which shall be and

- 11 -

are deemed valid, binding, enforceable and automatically perfected by the docket entry of ~~this~~the First Interim Order by the Clerk of the Court. If, however, the holder of any DIP Lien in its sole and absolute discretion shall elect for any reason to enter into, file, record or serve any such financing statements or other documents with respect to any such Lien, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of ~~this~~the First Interim Order by the Clerk of the Court.

11.     The DIP Liens and DIP Superpriority Claims shall be subject to right of payment of unpaid postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee, as agreed to by the U.S. Trustee or as determined by the Court (such fees, "UST Fees") and (if the Debtor's case is converted to chapter 7) the statutory compensation of a chapter 7 trustee in an amount not to exceed $25,000.00 (the "Chapter 7 Trustee Fees"); provided, however, that UST Fees and Chapter 7 Trustee Fees shall first be paid with any unencumbered funds available (if any). Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Secured Lender with respect to the UST Fees to the entry of the Final Order shall be Interim DIP Advances.

12.     Neither the payment of any professional fees incurred by professionals of the Debtor or Statutory Committee, nor the use of any proceeds of the Interim DIP Advances, shall include payment for any fees and expenses, if any, of any such professionals incurred directly or indirectly, in respect of, arising from or relating to:

A.     the initiation, joinder, support, or prosecution of any action contesting the Interim DIP Advances, or the validity of any liens granted to the DIP Secured Lender;

- 12 -

B. preventing, hindering or otherwise delaying (or supporting any other person or entity in preventing, hindering or otherwise delaying), whether directly or indirectly, the exercise by DIP Secured Lender of any of its rights and remedies under the Interim Order or DIP Financing Documents, including, without limitation, any attempt to prevent, hinder or delay (or supporting any other person or entity in preventing, hindering or delaying) the submission of any credit bid by the DIP Secured Lender;

C. the commencement, support, or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Secured Lender, or any of its officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Secured Lender;

D. any request to borrow money other than pursuant to the terms of the Interim Order, the Final Order, or the DIP Financing Documents;

E. with respect to the Debtor, any of the Debtor's Chapter 11 Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtor or its estate with respect to any matter to be specified as not subject to challenge by the Debtor pursuant to this Order or the Final Order; or

F. For any other purpose for which proceeds of the Interim DIP Advance may not be used pursuant to the DIP Term Sheet.

- 13 -

#80876077_v2

13.    ~~Subject to the~~Upon entry of the Final Order, effective as of the time of commencement of the Debtor's bankruptcy cases on the Petition Date:

A.    The Debtor waives irrevocably all claims and rights, if any, it or its estate might otherwise assert against the DIP Collateral pursuant to Bankruptcy Code sections 506(c), 105(a) or any other applicable law;

B.    no entity in the course of the Debtor's bankruptcy case shall be permitted to recover from the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the Debtor or its estate) any cost or expense of preservation or disposition of the DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

C.    no entity shall be permitted to recover from the DIP Collateral, or assert against the DIP Secured Lender, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy cases, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget; and

D.    the DIP Secured Lender shall not be subject to the "equities of the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any DIP Collateral.

14.    So long as the Interim DIP Advances remain outstanding, unless consented to in writing by the DIP Secured Lender, the Debtor shall not seek entry of any further order in its Chapter 11 Case which authorizes (a) the obtaining of credit or the incurring of indebtedness pursuant to sections 364(c) or 364(d) of the Bankruptcy Code that does not repay the DIP Facility in full, in cash, (b) the return of goods pursuant to section 546(h) of the Bankruptcy

- 14 -

Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to section 553 of the Bankruptcy Code or otherwise, or (c) except with respect to Senior Third Party Liens, any other grant of rights against the Debtor and/or its estate that is secured by a Lien in the DIP Collateral or is entitled to superpriority administrative status that does not repay the DIP Facility in full, in cash.

15.     Upon the occurrence of: (i) an Event of Default (as such term is defined in the DIP Term Sheet); or (ii) the Debtors' failure to comply with the terms of this Order or the Final Order (including, without limitation, its failure to comply with the Budget, subject to any approved variances), and the giving of written notice thereof by the DIP Secured Lender to counsel to the Debtor, the Statutory Committee (if any), and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), then, (i) the DIP Secured Lender shall be fully authorized, in its sole discretion to cease making Interim DIP Advances to the Debtor, (ii) the DIP Secured Lender shall be fully authorized, in its sole discretion, to terminate the Debtor's use of the DIP Collateral (including without limitation DIP Cash Collateral) pursuant to this Order and the Budget, and/or (iii) the DIP Secured Lender shall be fully authorized, in its sole discretion to immediately terminate the DIP Facility and demand repayment of the Interim DIP Advances then outstanding.

16.     Further, upon the occurrence of an Event of Default and transmission of a Default Notice or upon the Termination Date:

A.      the DIP Secured Lender shall have the right, free of the restrictions of sections 362 or under any other section of the Bankruptcy Code or applicable law or rule

- 15 -

#80876077_v2

(including, without limitation, Bankruptcy Rule 4001(a)), to take immediate reasonable action to protect the DIP Collateral from harm, theft and/or dissipation;

B.      with respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Statutory Committee (if any), and the U.S. Trustee shall have five (5) business days from the date of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to the DIP Secured Lender (a) enjoining or restraining the DIP Secured Lender from taking action or exercising rights and remedies (other than any rights and remedies set forth in Paragraph 15 herein, which may be exercised immediately upon the satisfaction of the conditions set forth in such paragraph) based upon the Event of Default specified in the Default Notice; or (b) challenging whether an Event of Default in the Default Notice has occurred or is continuing without cure (a "Restraint on Remedies"). During the Remedy Notice Period, the DIP Secured Lender shall refrain from exercising its rights and remedies (other than those which may be exercised upon the satisfaction of the conditions set forth in Paragraph 15 and below). Immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from the Court, or with respect to and upon the Maturity Date, immediately:

(1)      the DIP Secured Lender shall have the right, free of the restrictions of section 362 or under any other section of the Bankruptcy Code or Bankruptcy Rules (including, without limitation, Bankruptcy Rule 4001(a)), to exercise contractual, legal and equitable rights and remedies as to all or such part of the DIP Collateral as it shall elect, and to apply the Proceeds (as such term is defined below) of the DIP Collateral to the repayment of the DIP Facility obligations; and

- 16 -

(2)     the DIP Secured Lender, should it so elect in its sole and absolute discretion as exercised by the filing of an appropriate statement with the Court, shall be deemed to have been granted "peaceful possession" of, and right of access to, all or any portion of the DIP Collateral, by the ~~Debtors~~Debtor.

17.    The Debtor shall provide the DIP Secured Lender with (i) all financial statements, certificates, and reports required pursuant to the DIP Term Sheet in accordance with the timeframes specified therein and (ii) such additional information as the DIP Secured Lender shall reasonably request from the Debtor. The DIP Secured Lender and its representatives shall have reasonable access to the Debtor's business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral and/or to inspect the financial records and other records of the Debtors concerning the operation of the Debtors' business.

18.    For purposes of this Order, (a) "Proceeds" shall mean both (i) proceeds (as defined in the Uniform Commercial Code for the State of New York) and (ii) any and all payments, proceeds or other consideration realized upon the sale, liquidation, realization, collection or other manner of disposition of the DIP Collateral, whether in the ordinary course of the Debtors' business (including without limitation accounts, receivables, and other proceeds arising from the Debtors' sales of goods and/or performance of services) or other than in the ordinary course of the Debtors' business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection or other manner of disposition of DIP Collateral other than in the ordinary course of the Debtors' business, including without limitation any sale authorized pursuant to section 363.

19.    [Intentionally deleted for purposes of the Interim DIP Advances]

- 17 -

20.     The Debtor and any successors to the Debtor, including without limitation any successor trustee or trustees, shall assign or direct to the DIP Secured Lender any and all Proceeds realized in any Disposition of any DIP Collateral outside the ordinary course of business, and immediately deliver any and all such Proceeds which come into their possession to the DIP Secured Lender in the form received; provided, however, that the foregoing shall be subject in all respects to (a) payment of the UST Fees and ~~the statutory compensation of any chapter 7 trustee~~Chapter 7 Trustee Fees and (b) the priorities of the DIP Lien granted by this Order. The foregoing is without prejudice to the rights of (a) the DIP Secured Lender, the Statutory Committee (if any), or any other party to object to any proposed Disposition, or (b) any third party with respect to the allocated Proceeds of any Disposition of Collateral encumbered by a Senior Third Party Lien. The DIP Secured Lender is hereby authorized to credit-bid all or any of the obligations under the DIP Facility ~~a~~ at any Disposition of any DIP Collateral.

21.     All Proceeds retained by the DIP Secured Lender shall be applied to the repayment of the DIP Facility obligations, in a manner selected by the DIP Secured Lender, until such obligations are paid in full; provided, however, that the foregoing shall be subject in all respects to the terms and the priorities of liens under this Order. Such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability.

22.     In making decisions to make any Interim DIP Advance to the Debtor pursuant to the DIP Facility or in taking any other actions reasonably related to this Order or the DIP Financing Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Secured Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "control person", "responsible person" or other "owner or operator" with respect to the operation or

- 18 -

management of the Debtor (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute), and the DIP Secured Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the DIP Secured Lender and the Debtor.

23. This Order shall be binding upon and inure to the benefit of the DIP Secured Lender, the Debtor, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code. Except as set forth herein with respect to the UST Fees and the ~~statutory compensation of any chapter 7 trustee~~Chapter 7 Trustee Fees, no rights are created under this Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

24. Any order dismissing the Debtor's Chapter 11 Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Secured Lender's liens and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Interim DIP Advances are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim and the DIP Liens.

25. To the extent that any of the provisions of this Order shall conflict with any provisions of the DIP Term Sheet, this Order is deemed to control and supersede the conflicting provisions therein.

- 19 -

26.     The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Fed. R. Bankr. P. 6004(h) or otherwise. Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Fed R. Bankr. P. 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause.

27.     Nothing in this Order shall preclude the Court from entering a Final Order containing provisions inconsistent with or contrary to the provisions of this Order, provided, however, that the DIP Secured Lender shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to section 364(e), with respect to the Interim DIP Advances. The DIP Lien and the priority afforded the Interim DIP Advances, as set forth in this Order, shall be binding on the Debtor and any successor trustee or trustees even if this Order is reversed or modified on appeal with respect to all loans, advances, and other financial accommodations made by them pursuant to this Order. Except as provided herein, no Proceeds or DIP Cash Collateral may be used by any party in interest seeking to modify any of the rights granted to DIP Secured Lender hereunder or in the DIP Financing Documents.

28.     The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtor's performance under this Order or the DIP Financing Documents, including, without limitation, (a) the execution of the DIP Financing Documents, and (b) the payment of the fees and other expenses described herein or in the DIP Financing Documents as such become due. The Debtor is further authorized to continue to negotiate any supplemental or modified DIP Facility terms concerning potential future advances after the First Interim DIP Advance (as defined in the DIP Term Sheet)Advances, as well as the terms of any subsequent

- 20 -

interim or final orders related to any such potential DIP Facility advances, and both the Debtor and DIP Secured Lender reserve all rights regarding such negotiations.

29.     The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on terms and conditions to which the Debtor and DIP Secured Lender have agreed. Thus, each of the terms and conditions constitutes a part of the authorization under sections 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in section 364(e) of the Bankruptcy Code, regardless of (i) any stay, modification, amendment, vacation, or reversal of this Order or the DIP Financing Documents or any term hereunder or thereunder; (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of this chapter 11 case.

30.     A final hearing with respect to the Motion is scheduled for ~~December 14~~January [--], 2020 at ~~2:00  p~~[--[--:-- -.m]. (the "Final Hearing") before the Honorable Robert J. Faris, United States Bankruptcy Judge. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Rule 2002 request for service. Any party in interest objecting to the relief sought at the Final Hearing shall file written objections by December 11, 2020, and serve them on (i) the Debtor's proposed counsel; (ii) the DIP Secured Lender's counsel, Holland & Knight LLP, attn: ~~Robert W. Jones~~Brent McIlwain, 200 Crescent Court, Suite 1600, Dallas, TX 75201 and [H&K Local Counsel]; and (iii) the Office of the U.S. Trustee.

**END OF ORDER**

Submitted by:
CHUCK C. CHOI
ALLISON A. ITO

- 21 -

Email:  cchoi@hibklaw.com
Email:  aito@hibklaw.com
TOPA FINANCIAL CENTER
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone:  (808) 533-1877
Facsimile:  (808) 566-6900
Proposed Attorney for the Debtor

- 22 -

Document comparison by Workshare 10.0 on Saturday, December 12, 2020 10:56:36 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://HKDMS/Active/80876077/1 |
| Description | #80876077v1<Active> - Wing Spirit - Second Interim DIP Order |
| Document 2 ID | iManage://HKDMS/Active/80876077/2 |
| Description | #80876077v2<Active> - Wing Spirit - Second Interim DIP Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 63 |
| Deletions | 41 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 104 |